GEORGE KLINE and LEWIS RITTER, Partners as RITTER & KLINE, *v.* GEORGE GUNDRUM.

1. An agreement for the sale of a store-stock contained also a lease of the store-stand. The sale of the stock was executed by giving bonds, which bonds were outstanding and lease running, when a re-sale of the store took place, the original vendees agreeing to sell to the vendor, for a certain price, "the store, dry

goods, and everything in and about the premises being leased to them (as by the former agreement) ; this is to be in lieu of that agreement," and nothing was said about the outstanding bond. *Held,* that the last agreement was *in lieu* of the first one, only so far as the lease went, and did not embrace the bonds. The intent to embrace the bonds ought to be clearly established and sustained by sufficient consideration.

2. When statements are about to be sent out with a jury, counsel should examine them, and call the attention of the court below to items objected to, and request the court to order such items to be stricken out.

3. The assignment of plaintiff's claim before trial will not prevent the defendant from entering judgment upon a verdict for a balance in his favour, where the pleas were payment and set-off, and the trial was between the original parties to the record.

ERROR to the Common Pleas of Union.

This was an action on the case by Ritter & Kline against Gundrum, the facts material to an understanding of which, are briefly these :—

On the 24th January, 1842, Gundrum entered into certain articles of agreement with Ritter & Kline, by which " the said Gundrum agrees to sell a certain store or stock of goods, consisting of various kinds of goods, with plaster, coal, iron, &c., including all on the premises situate on the north side of the Pennsylvania Canal, on the Isle of Que, in Union county, unto the said George Kline and Lewis Ritter. The said stock of goods, &c., are to be sold at first cost, and carriage added for all and every article found on the premises. The boundary of premises will be described by referring to the article of agreement between H. W. Snyder, and Gundrum and Kingsbury, it being the premises now in possession of George Gundrum. The lower part of the premises consist of a dry dock and a lot of ground ; the same is rented to Charles Moyer for one hundred and thirty dollars, including the dock and lot below the warehouse ; there is a shop occupied by Mr. Gerhart, at the west end of the store, which is belonging to George Gundrum, and not to the property leased by H. W. Snyder. The payments are to be as follows : three thousand dollars on the first day of April next, and the balance as follows : five hundred dollars on the first day of August next, and the residue in two equal payments, say half on the first day of April, 1843, and the other half on the first day of October, 1843 ; all to bear interest from date, except the first payment. The said Kline & Ritter are to pay a yearly rent of two hundred dollars, unto the said Gundrum ; the lease to continue three years from the first day of December last ; all the rent of the dry dock and other buildings, are to be paid to said Kline & Ritter."

Ritter & Kline gave judgment-notes to Gundrum for the pur-chase-money, and entered into possession of the store, &c.   On some of those notes judgment was entered.

On the 19th January, 1843, the same parties entered into an-other article of agreement, of the following tenor :—

" The said Ritter & Kline agree to sell a certain store, dry goods, groceries, and everything in and about the premises, being leased to them in 1842, by the said above-named Gundrum, for the term of three years, this is to be *in lieu of that agreement*, the said Gundrum agrees to pay unto the said Ritter & Kline, the sum of *six thousand dollars*, to include all the boats, horses, mules, wagons, and everything belonging to said firm, which may be on the said premises or elsewhere ; also a smoke-house on the lot of H. W. Snyder ; one shop at the north end of the store ; one platform scale.   The payments to be made as follows : four thousand dol-lars to be paid on the first day of Nov. 1843, and the residue in one year from the first day of May (1844).   The said Gundrum may *bring* in as off-set against the first payment, for such debts as he may have become liable on the account of Ritter & Kline. The said Gundrum is to have possession on the nineteenth day of January, 1843.   It is also understood that the said Gundrum is to have all the lumber which they have at Hoffman's Mills, in Lycom-ing county, at five dollars per thousand feet—and if delivered at the canal, they are to pay six dollars and fifty cents per thousand. Also one wagon, one buggy, and one set of harness ; all of which the said Gundrum shall apply to paying their debts in the city of Phila-delphia, and other places, and if anything left, to return the same to Ritter & Kline."

Gundrum took possession of the store again under this second article ; but the parties afterwards differing as to its construction, and as to various matters of account between them, the present action was instituted.

The plaintiffs, having arbitrated the case, obtained an award for $4,380.70, which was filed 21st May, 1846, on which day was entered of record an assignment by the plaintiffs of one-third of the amount so awarded in their favour, to Messrs. Swineford & Miller, of another third to Messrs. Maynard & Watson, and of the remainder to Mr. Littel.   On the following day the defendant appealed.

Upon the trial the jury found for the defendant $172.70.

As to the construction of the second article, of 19th January, 1843, the court below (WILSON, President) charged as follows :—

" The purchase of the store by Ritter & Kline, is the first of the dealings, that we have evidence of, between these parties, and with it commence their difficulties. The inventory of the goods taken under the article of 24th January, 1842, with the amounts of the items footed up, amount to $10,010.89, to which is an entry of credit by bonds $10,000, leaving a balance of $10.89 charged in day book. The defendant shows obligations as follows :—

| | | | |
|---|---|---|---|
| One dated 7 Feb., 1843, | | payable 1 Nov., 1843, for | $1,000.00 |
| " " " | | " 1 April, 1843, | 1,000.00 |
| " " " | | " " | 1,000.00 |
| " · " " | | " " | 1,000.00 |
| " " " | | " " | 1,000.00 |
| " " " | | " 1 August, 1843, | 500.00 |
| " " " | | " October, 1834, | 1,000.00 |
| " " " | | " " | 250.00 |
| " 5 Feb., 1842, | | 2 months after date, | 3,000.00 |
| " 7 " | | 1 October, 1843, | 1,000.00 |
| " 23 April, 1843, " | | 20 days after date, | 350.00 |

$11,100.00

" The plaintiffs contend that the whole of the defendant's claim on these bonds, or the whole of the residue due upon them, was swept away by the agreement of the 19th January, 1843, and refer particularly to the clause in the agreement : ' The said Ritter & Kline agree to sell a certain store, dry goods, groceries, and everything about the premises, being leased to them in 1842, by the said above-named Gundrum, for the term of three years, *this to be in lieu of that agreement.*' To be in lieu of, means to be in the place of ; and had this latter agreement been one not changing the positions of the parties to the former agreement in the relation of seller and purchaser, debtor and creditor, the terms used, ' this to be in lieu of that agreement,' could fairly be applied as the plaintiffs contend for ; but that agreement was consummated so far as the amount they were to pay for their purchase was concerned, by Ritter & Kline taking possession of their purchase, and in payment thereof executing bonds and notes to Gundrum. By this last agreement, Gundrum takes back the store. No mention is made whatever of the bonds and the notes taken in payment of it. The defendant makes no provision for his retaining them out of the purchase-money ; neither do Ritter & Kline stipulate for their cancellation, or their being given up to them. The defendant retains them in his possession, or all but one, which is produced on

notice by plaintiffs. The plaintiffs give the possession of the store and what they sell to him, without exacting the re-delivery of these bonds and notes. And in this sale the parties agree on a price the defendant is to pay for the property he purchases in and about the store-room and premises, and all their property (except the lumber), for $6,000. The agreement provides that against the first payment the defendant may bring in as a set-off, such debts as he may have become liable for on account of Ritter & Kline, and shall apply of the amount he is to pay for the lumber to the payment of their debts in the city and elsewhere, and if anything is left, to return the same to Ritter & Kline. Although it says he is to return the balance to Ritter & Kline, it would not prevent the defendant retaining out of it any legal demand he had against them. The plaintiffs appear to have had in view the payment of their creditors generally, and that out of the first money due on their sale, Gundrum might set off such of their debts as he had become liable for, or guarantied the payment of, for the plaintiffs. And we cannot, as a question of law, say, that by the agreement of the 19th January, 1843, these obligations were cancelled or swept away.

" The plaintiffs say, that the conduct of the parties, subsequent to the agreement, in connexion with the fact of their not being noticed in the agreement, shows that they were cancelled or settled and that the grain which they furnished to Gundrum while they were in business, and the $2,500 bond Kline had on Bryan, assigned in part payment of their bonds to Gundrum, furnished the consideration for the settlement of these obligations. But if this was so, why would not the bonds have been given up? The plaintiffs' allegation is, that they were, and that they were surreptitiously procured by Gundrum subsequently—that Gundrum fraudulently obtained them. The evidence, if proved, should not be such as to leave the question to presumption; fraud is not to be presumed—it may be inferred from facts and circumstances proven, but the facts and circumstances should be such as to show the fraud beyond mere presumption.

" The question presented in this shape on the claims for these bonds is for you. Is there any proof to satisfy you that the parties settled this claim on the bonds? If there is not, exclusive of the agreement, the question turns on the construction of the article of agreement alone, which is a question of law for us; and the face of the agreement and its terms do not authorize the construction con-

tended for by the plaintiffs' counsel, that by it this claim on these obligations was settled."

The principal exception to the charge was founded on the construction which the court put upon those words of the second article of agreement—"this to be in lieu of that agreement"—as not embracing the first articles, and so affecting the cancellation of the outstanding judgment-bills (as they were called) given by Ritter & Kline under the first articles. As to the other exceptions noticed by the Supreme Court, whatever facts may be involved in them are sufficiently stated in the opinion delivered here.

*Maynard* and *Miller*, for the plaintiffs in error.—The agreement of 24th January, 1842, was merged in that of 19th January, 1843, and all the notes and single bills given under the former were merged, and in effect cancelled, by the second being in lieu of the first agreement.

By the agreement of 1843, the purchase-money was to be paid as follows:—$4,000 on 1st November, 1843, and the residue in one year from 1st May, 1844.

The agreement provides, "the said Gundrum may bring in as off-set against the first payment, for such debts as he may have become liable on the account of Ritter & Kline." Not one word is said as to the obligations Gundrum claims as a set-off, which were given him on the purchase of the store under the agreement of 1842. Yet the court gave such a construction to the agreement of 1843, as to allow defendant a credit for all those obligations, and took the fact from the jury. 2 Tomlin's Law Dict., 447: in giving the meaning of the word "Lieu," the following is contained: "Lieu means instead, or in place of another thing. And when one thing doth come in the place of another, it shall be of the same nature as that was, as in the case of an exchange, &c.:" 2 Shep. Abr. 359. 1 Greenleaf's Evidence, §§ 4, 9 : whether there be any evidence or not, is a question for the judge; whether it is sufficient, is a question for the jury.

It is contended also, that the court erred in their construction of the latter clause of the agreement of 19th January, 1843; plaintiffs allege that the words "all of which the said Gundrum shall apply to paying their debts in the city of Philadelphia, and other places," &c., refers to the lumber, wagon, buggy, and set of harness, and had no reference to the consideration of the store, and consequently Gundrum had no right to bring in claims against Ritter & Kline for payments he alleged he had made, to a greater amount

than the value of the lumber, wagon, buggy, and harness. Yet, notwithstanding, the court decided that Gundrum might bring in all claims he alleged he paid for Ritter & Kline. Seigle *v.* Lotterbough, 5 Barr, 490 ; for a misdirection judgment will be reversed, though no instruction be requested.

In regard to defendant's calculations, the following authorities are cited. Frazier *v.* Funk, 15 S. & R. 26 : the court may allow the jury to take out with them the statement of particular items, of account by a party and calculations, but no item should be inserted unless there has been some evidence given of it. Morrison *v.* Moreland, 15 S. & R. 61 : a paper will not be allowed to go to the jury containing a statement of items of some of which there is no proof. S. P. Stewart *v.* Bank, 11 S. & R. 267 ; Whiting *v.* Whitman, 15 Mass. 405 : where a material paper not read in evidence had been given to the jury by mistake, a new trial was granted.

*Bellas* and *Slenker*, contrà.

The opinion of this court was delivered by

COULTER, J.—Twenty-three bills of exceptions are accumulated in this cause. But, generally speaking, they cover items of no great magnitude ; and, with the exception of the third, do not embrace questions of much difficulty. They are but the outskirmishing of posts and detachments preparatory to the main battle. The third relates to the construction of the agreement of 19th January, 1843, and involves the principal point in the cause. Its consideration will therefore be deferred until the error assigned to the charge of the court in relation to the same matter is considered.

In regard to the other bills of exception, *twenty-two in number*, this court have given them a careful and particular consideration, and are of opinion that the court below committed no error in any one of them. I shall only make a few cursory observations about them, which will touch, and perhaps cover most of them. Indeed, there would be no end to opinions, if twenty-three bills of exceptions to individual scraps of evidence required a statement of all the law and decisions in their vicinity. The mint, anise, and cumin require only a passing notice, whilst the weightier matters of the law are more deliberately examined.

It is not necessary that the person who makes the entries in shop or tradesmen's books, should with his own hands deliver the goods, in order to make the entry evidence of sale and delivery. If it should be so held, the rule would in a great measure destroy the practical usefulness of such books. In many, a great many estab-

lishments, there are several salesmen and but one book-keeper. The salesman reports to the book-keeper, who makes the entry. This process enhances the security of the purchaser, because it gives him the chance of getting the testimony of more than one person, if he has been, as he believes, foully dealt with, to correct any fraud or mistake. It would create confusion in business, and not increase the security of the purchaser, to require every salesman to enter his own sales. But an equivalent principle has been established; one which, if not exactly identified with this case, is sufficiently near in affinity and analogy to govern it. Thus, it was ruled that the plaintiff's books were good evidence to prove a sale and delivery of lime, without the evidence of the carters by whom the lime was delivered: Curren *v.* Crawford, 4 S. & R. 3.

It is a safe rule never to declare this useful kind of evidence in favour of merchants and mechanics bad or void, when it conforms to the general usages of trade, and which must be known to purchasers. But the book rejected had a more fatal spot upon it. The witness swore that it was altered and erased after he made the entry. A book of entries, which has been altered and erased, is not competent evidence to be submitted to a jury after it has been mutilated, until such alterations and erasures have been explained, so as to remove from the mind of the court the presumption of unfairness, which would naturally arise from their being made: Churchman *v.* Smith, 6 Whart. 146.

Nothing more quickly excites apprehension of unfairness than alterations and erasures in books of entries. Their value depends on their being made at the time of the transaction, and their being so suffered to remain. The alterations made in the book covered by the sixteenth error assigned, were explained to the satisfaction of the court, and therefore the book was properly admitted. We are bound to presume that the court acted correctly in both cases; the books are not here produced, and we cannot say they did not. Several of the bills relate to papers admitted in evidence, of which neither copies nor the originals are produced; we cannot say, therefore, that the court erred; because the value and the pertinency of a paper depends much on its entire phraseology. So far, however, as we have been enabled to judge from conflicting statements, no error was committed; but we are excused from considering these exceptions by a rule of court, which requires all such papers to be returned with the records, or else the exceptions to be passed over.

The third bill of exceptions relates to the judgment-bills given by Ritter & Kline to Gundrum, in pursuance of the agreement of

24th January, 1842, by which Gundrum sold the store to them; and which they re-sold to Gundrum by the agreement of 19th January, 1843. This bill brings up the main question in the cause; which also arises upon the charge of the court, and is assigned for error there: that is, whether the agreement of 1843 extinguished and merged the agreement of 1842, and the judgment-bills, as they are called, for $4,500, and some other notes given in pursuance thereof, or not. The words in the agreement of 1843, which are alleged by Ritter & Kline to extinguish and merge the agreement of 1842, and the judgment-bills and notes given in pursuance of it, are as follows: " *The said Ritter & Kline* agree to sell a certain store, dry goods, groceries, and everything in and about the *premises, being leased to them in* 1842, by the above-named Gundrum, for the term of three years; this is to be *in lieu* of that agreement; the said Gundrum agrees to pay unto the said Ritter & Kline six thousand dollars, to include all the boats, horses, mules, &c."

If there is any ambiguity in this clause of the agreement of 1843, it is a patent ambiguity, and can be relieved only by some other part of the written contract. But I apprehend there is no ambiguity whatever about it.

The agreement of 1842, as an integral thing, is not mentioned in the clause under consideration, nor in any other part of the agreement of 1843. It cannot therefore be the next antecedent to which the words "in lieu of that agreement" refer. What then is the antecedent to which they refer? why, undoubtedly these words —" the premises being leased to them in 1842, by the above-named Gundrum, for the term of three years, this is to be *in lieu of that agreement.*" What agreement? why, the agreement of lease: could any other collocation of words make it more plain and definite? It is true that the agreement of lease is included in the same articles of agreement by which the store and the articles on the premises leased were sold to Ritter & Kline, but that only makes the construction more transparent; for, when the store and articles on the premises were sold back to Gundrum, it was necessary to terminate the lease, as no sane men would agree to pay rent for premises occupied by the owner. An agreement to lease one piece or parcel of land, may well be embraced in articles by which another is sold, and an agreement to sell a store may still more aptly embrace or be accompanied by a lease of the premises where the store is kept. That was the case in the instance of the agreement of 1842; and when the store goods, &c., were sold back to Gundrum in 1843, it was necessary to put an end to the lease to Ritter

& Kline, of the premises where the store was kept. Gundrum was to occupy himself the premises leased, and therefore Ritter & Kline were to hold the premises no longer, nor pay any more rent. Hence the introduction of the words "*in lieu*" of that agreement into the articles of 1843. No construction can embrace the sale of goods in 1842, and the judgment-bills given in pursuance thereof, without adding, not words merely, but sentences and phrases to the agreement of 1843.

If it is not lawful to add to a written contract by parol evidence, how can it be made to embrace things of great moment beyond its terms by mere conjecture?

The agreement of 1842, as to the sale of the store and goods, was an executed agreement. The title had passed to Ritter & Kline; but the lease of the premises was a continuing agreement, which could be ended by the act of the parties, and they could substitute something *in lieu* of it; and that they did. But Ritter & Kline had, after the date of the agreement of 1842, to wit, on the 7th February, 1842, given judgment-bills to Gundrum, in pursuance of and in execution of the agreement. They were a security of a higher nature, more specific and individuated than the articles of agreement; and on one of them judgment was entered, the record of which accompanied the bill in evidence. They stood alone, and without the article of agreement. By what necromancy in law are they brought within the vortex of the words *in lieu*, whilst they are left outstanding in the hands of the obligee? Even an intent to obliterate judgment-bills left outstanding would be only an equitable defence, and ought to be clearly established, and not depend upon shadowy and unreasonable conjecture. The intent also must be sustained by sufficient consideration. What consideration is alleged to be given in this case to Gundrum for his judgment-bills to the amount of $5,000, or thereabouts? Nothing is alleged, but the re-sale of the store goods and the articles on the premises. But the parties have distinctly set down in the written contract the consideration of that sale to be $6,000, to be paid in a certain way. And yet we are called upon to say, by conjectural construction of the words *in lieu*, that the consideration was $11,000, and that the judgment-bills left outstanding in the hands of Gundrum, were sunk and extinguished by the re-sale of the store goods.

The counsel for Ritter & Kline allege, that they made large additions to the stock during the year, and incurred debts in Philadelphia, which Gundrum was to pay out of the $6,000, and that

the store was therefore more valuable in consequence of these replenishments, which was the cause of its being worth $11,000. Who knows, however, but what there were waste gates in operation, as well as replenishments during the year? Ritter & Kline, it seems, pursued the lumbering business and boating on the canal during the year. They may have sold a vast amount of goods during the year—may have lost by inattention, mismanagement, or bad debts. But this is all conjecture on both sides; the debts in Philadelphia may have been incurred for something connected with the lumbering or boating business. But it appears from the article of 1843, that there were things included in the sale to Gundrum which were not included in the sale of 1842 to Ritter & Kline, such as boats, horses, mules, &c. This may have enhanced the price, although the stock of goods was about the same; the consideration, however, is put down in writing at $6,000, by the parties themselves, and that effectually excludes the judgment-bills which were left outstanding without mention, and are therefore untouched.

No men, even half-witted, could have intended to relinquish the judgment-bills without mentioning them, and leave them yet outstanding in the hands of the obligee, and mention the lease, so inferior in import, unless they just intended the lease and nothing more. All the common sense of the case, the grammatical construction of the instrument, and the ostensible usefulness of the stipulation, are fulfilled by this interpretation, to wit, referring the words *in lieu of that agreement*, to the next antecedent, the agreement of lease.

There are some other exceptions to the charge of the court, all, however, depending more or less upon the principal question, and being put in evidently as ancillary thereto. I do not consider them as requiring special comment, as this opinion has been already extended beyond my wishes. The court, after maturely considering, deemed them insufficient to disturb the judgment.

The last exception is in these words, "statements sent out by the parties, objected to on both sides; all statements directed to be filed when the jury return their verdict, and to which statements allowed to go out with the jury, both parties except."

The exception is so very general, that I know not where this court could lay their finger and say, herein the court below erred. We never regard the assignment of general errors. Counsel must point out the particular error committed by the court below, the question having been there made. Now the only question which

this exception shows to have been submitted to the court below, was, whether statements of claim presented by each party and by both, would, according to ancient practice, be sent out with the jury. But on that subject there is no doubt. Jurors are often much assisted in coming to a right conclusion, by comparing statements of the parties' claims and recalling the evidence in regard to them. Every lawyer in long practice knows this to have been an ancient custom, not sanctioned by the lower courts only, but frequently in an incidental manner by the Supreme Court.

It may be that some mistake was committed in these accounts and statements; they are of great length, embrace many items, and on each side amount to about twenty thousand dollars.

But it was the duty of the counsel to have examined these accounts of claims, and if there was anything wrong in any item or any number of items, to have called the attention of the court below to those items and requested that should be stricken out. As they did not do that, we cannot and will not say that the court erred, because it does not appear that they were requested to, or that they did, exercise any judgment of the suitableness or admissibility of these items. Counsel have duties to perform as well as courts. Both and each may sometimes be in error or delinquent, and each ought to be answerable only for their own mistakes. So far as the record goes in this behalf, we think the court did not err in allowing statements on each side to go out with the jury.

There is nothing in the fourth error assigned: to wit, that the court erred in entering judgment, the verdict being for a balance in favour of defendant, after the claim of plaintiffs had been assigned to other persons. Immediately after the award, the amount thereof, $4,380.20, was assigned by plaintiff to five attorneys named on the record. But this did not deprive the defendant of his right to have a certificate in his favour, under the act of Assembly, against the plaintiffs, as the plea was payment and set-off. The jury were not sworn to try or adjust any conflicting claims between Miller & Swineford, Maynard & Watson, and Little, but between the legal parties on the record—Ritter & Kline, and Gundrum. The whole trial was on that basis and issue, and the verdict was rendered accordingly; the amount due was found in favour of defendant, which would of course be against the plaintiff on the record, between whom and Gundrum the whole trial was conducted, and not between Gundrum and the equitable assignees, who were named on the record after award in plaintiffs' favour.

But this circumstance cannot deprive the defendant of his just

Y

rights under the laws of the country. This error assigned is not sufficient to overturn or set aside the judgment. Especially since the passage of the act of 11th April, 1848, entitled an act supplemental to an act concerning Le Raysville Phalanx, the 12th section of which act is particularly applicable to this case, the judgment being rendered after the passage of that act.

Judgment affirmed.