PIERCE BAILEY, plaintiff in error, *vs.* RICHMOND BARNELLY, defendant in error.

[1.] A continuance will not be granted in a cause where none of the material facts necessary for that purpose are verified.

[2.] A party upon his preliminary examination before the Court, is not bound to testify to any fact which is referable to the jury only.

[3.] A blacksmith's books proven in the usual way, are admissible in evidence, notwithstanding a portion of the items were charged in the defendant's account, upon the report of the slave who performed the work.

[4.] When shop books are proven in the method prescribed by the rules of evidence and their probity established by customers of long standing, no other *aliunde* proof will be required as to the reasonableness of the charges; that may be inferred from an inspection of the books themselves, and other circumstances.

Bailey vs. Barnelly.

Assumpsit, in Warren Superior Court.   Tried before Judge THOMAS, at October Term, 1857.

This was an action by Richmond Barnelly against Pierce Bailey on an account for blacksmith work.

The plaintiff having announced ready, defendant's counsel moved for a continuance on the grounds:

1st. That defendant was absent, having left the Court in consequence of the dangerous illness of one of his slaves, and who stated to his counsel when leaving, that if it was possible for him to get back he would do so, but if he did not return, you (counsel) might know that he could not safely leave.

2d. That two witnesses were absent, one E. N. Hill, who was then lying very sick, but counsel could not state what he could prove by him; another, James Battle, who would prove a special contract.   The subpœna docket showed that subpœnas had issued for both these witnesses, and counsel stated that defendant had told him that both had been subpœnaed.

Plaintiff's counsel objected to the sufficiency of this showing, it not appearing that the defendant was detained by the sickness of his slave, and that his presence was necessary to his defence.

Counsel for defendant stated that his presence was necessary.

The Court refused the motion to continue, and counsel for defendant excepted.

The plaintiff offered himself as a witness to prove his books, and being sworn on his *voire dire,* stated the books offered were his books of original entries, in his hand-writing, and that he kept no clerk.   That his blacksmith who did the work was a slave, and that he had no white person in the shop.

Defendant's counsel proposed to ask the plaintiff whether the entries were made from his own knowledge of the work having been done, or whether they were made from statements made to him by the slave. The question was put, and the answer was, "that a great part of the work was done within his own knowledge, and some was reported to him by his smith." He further stated that some of the work done was brought by defendant, and he saw his cart there sometimes.

Defendant's counsel then proposed to ask what part of the work plaintiff knew to have been done, and what part was charged upon the report by the smith.

The Court, upon objection, refused to allow the question, unless the answer should go to the jury. And to this ruling counsel for defendant excepted.

Plaintiff then proved that he kept correct books, and offered the books in evidence. To which defendant objected, on the ground that a portion of the account was charged upon information received from the slave.

The Court overruled the objection, and admitted the books in evidence, and counsel for defendant excepted.

The Court being about to adjourn, plaintiff's counsel, in the hearing of the Court, requested two of the jury to take the bill of particulars and the books and compare them, which they did, and on the meeting of the Court next morning, these jurymen, *as witnesses*, testified that they had made the examination and found that they, the bill of particulars and books, agreed, except in some small matters. No objection was made at the time to this proceeding and proof, but counsel for defendant except and assign the same as error.

Plaintiff closed.

Defendant offered a witness, who testified that, in 1853, the first of the year, heard the parties make a contract; that Barnelly was to do Bailey's work for eighty dollars that

year—that is to shoe his horses and do the plough work. The work done on the wagons and carts, and all other work not included in the contract, but to be paid for, over and above the eighty dollars.

Defendant closed.

Defendant's counsel requested the Court to charge the jury, that it was incumbent on the plaintiff to prove that the charges for the work done, were the usual and customary charges, and were reasonable, and if this was not done, he could not recover.

The Court refused so to charge, but charged that that kind of proof was unnecessary; that if there was proof that plaintiff kept correct books, that this and the books themselves would supply the other proof.

To which charge and refusal to charge defendant excepted.

The Court further charged that it made no difference who did the work, whether a white man or a slave, or whether the items of the account were furnished by the negro for entry in the books, that the books stand before the jury as in other cases of shop books.

To which charge defendant excepted.

The jury returned a verdict for plaintiff for three hundred and thirteen dollars and seventy-one cents, ($313 71.)

And counsel for defendant tenders his bill of exceptions, and alleges as error the rulings, decisions, charges and refusals to charge herein excepted to.

E. H. POTTLE, for plaintiff in error.

LINTON STEPHENS, contra.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in refusing a continuance? Not a material fact necessary to a continuance of the cause was

verified.   The defendant, Bailey, stated to his counsel that he left the Court in consequence of the dangerous illness of one of his slaves.   He declared it to be his intention to return, if it were possible for him to do so, and that if he did not, his attorney might know that it was because he could not leave home.   But not one of these facts were sworn to by the defendant.   Two persons claimed to be witnesses for Bailey, Hill and Battle, were absent and the docket showed that subpœnas had issued for both, but there was no proof that either had been served.   We think the motion was properly refused.

[2] Did the Court err in not allowing defendant's counsel to ask the plaintiff, when examined upon his *voire dire,* what part of the smith-work was done of his own knowledge; and what part was charged upon the report alone of the negro, unless the answer should go as testimony to the jury?

We think not, most clearly.   The plaintiff had already made the preliminary proof required by law, to let in his books as evidence.   He had gone further, and in reply to a question propounded to him by the defendant's counsel, he had stated that a great part of the work charged in the account was done within his own knowledge, and that some of the items in the account were made from the report of the smith.   That some of the work done was brought by the defendant to the shop, and that he had seen his cart there sometimes.   Now, it will be observed that all of these facts were brought out in the preliminary examination before the Court and at the special instance of the defendant.   We repeat that more was already extorted from Barnelly than the rules of evidence required, and of course he was entitled to arrest this course of examination, whenever he saw fit, unless it was suffered to go to the jury.

[3.] Are the books of a blacksmith admissible in evidence when proven in the usual mode, it appearing that some portion of the account was charged upon information received from a slave, who did the work?

In *Taylor vs. Tucker*, 1 *Kelly* 231, this Court say : " It is also objected that a part of the entries were made, as proven by the plaintiff, from memoranda furnished by the sawyer, who delivered the lumber.   The sawyer was the agent of the plaintiff for delivering it and no more.   He kept no books, but reported to the plaintiff the transactions as they occurred; and from these reports, according to the testimony, he made his entries.   This fact constitutes no departure from the rule. The delivery of the lumber by the plaintiff's agent, his memoranda reported to him, and the plaintiff's entries made at once from these memoranda, all make up the *res gestæ*.   Entries transcribed from a slate have been admitted as original entries.   13 *Mass. Rep.* 428.   The reason given is that entries on a slate are mere memoranda, not designed to be permanent."

It does not appear in the report of this case, whether the sawyer was a white or a black man; nor should it make any difference.   Were the entries made cotemporaneous with the work performed?   If so, they were a part of the *res gestæ*, and competent.   In *Ingraham vs. Boekins*, 9 *S. & R.* 285, it was held that where the goods were delivered by the *servant* during the day and entry made by the *master* at night or on the following morning, from the memorandum made by the servant, it was sufficient.   So in *Price vs. Lord Torington*, 1 *Salk.* 285, 2 *Ld. Reymond*, 873 *S. C.*, one of the earliest reported cases, illustrative of this subject, being an action of *assumpsit* for beer sold and delivered, the plaintiff being a brewer, the evidence given to charge the defendant was that in the usual course of the plaintiff's business, the draymen came every night to the clerk of the brewhouse, and gave him an account of the beer delivered during the day, which he entered in a book kept for that purpose, to which the draymen set their hands.   This entry with proof of the drayman's hand-writing and of his death, was held sufficient to maintain the action.   I am aware that the Courts of England have

manifested an indisposition to extend the doctrine of this case. See 11 *M. & W.* 773, 775, 776.

So in the case of *Fielder and others vs. Collier,* 13 *Ga. Rep.* 497, this Court decided that the book-keeper and account of sales clerk were competent witnesses to testify from the entries and memoranda made by them respectively, as to the amount of sales, expenses, &c., and that it was not necessary to go behind the books and examine the weigher, wharfinger and other employees, who transacted the business. We ask, "shall this proof be received, or shall the plaintiff be compelled to go behind the books thus verified by the clerks who kept them, and resort to each of the sub-agents who participated in the transaction and sale of this produce? Are not the entries thus made in the usual course of the business of this trading establishment, and as a part of the proper employment of the witnesses who prove them, not only the best, but the only reliable evidence which it is practicable to produce? We have no hesitation in holding that propriety, justice and convenience require this proof to be admitted. The weighers, wharfingers and numerous subordinates, who handle this cotton, keep no books. They report to the clerks who keep the books of the concern, and their functions are performed. It is not reasonable to suppose that they can remember the multitude of transactions occuring every day. After the lapse of a very brief period, the clerks themselves could only call to mind what had been done by referring to their entries and memoranda. How could these sub-agents be expected to do so without the means of refreshing their memory? The actual salesmen in none of the great mercantile establishments keep the books. They report to the clerk who does, and he makes the entries. And yet these books are always received to prove the sale and delivery of goods."

These cases establish that entries made at *second hand* are admissible, as *original* entries. But it is said that the books are made up in all these cases, from the report of white men.

Bailey vs. Barnelly.

I ask what difference is there in principle in this respect. True, the defendant might resort to the original parties for proof to discredit the account. But the foregoing reasoning shows that he could derive but little relief from this source. And that the allowance of this species of evidence depends upon other considerations than that upon the difference in the *status* of the employee, as to whether he be bond or free. They are admitted because they are the register of the party's daily business. Because they are verbal acts, and therefore, part of the *res gestæ*, being made *dum fervet opus*. They are admitted *ex necessitate rei*. Because to reject them, is to enact that shops kept by negro smiths cannot collect their accounts—a startling proclamation to make to the country. This Court has repeatedly admitted the sayings of a slave to the attending physician, as to his symptoms, and under other circumstances. True, it is the privilege of a freeman only, to give testimony in Courts of justice, and the disability of bondage, affixed by the common law, has never been removed, in this State, only as to those of their own caste and colour. But the admissibility of the sayings of a slave, under certain circumstances, and in the case before us, stand on a wholly different foundation, as has been again and again demonstrated by this Court. We admit these books because it was proven by the customers of the shop who had had their work done there by the same smith for a quarter of a century, that the accounts were kept correctly. And we fully concur in the profound and philosophical views urged by the able counsel for the defendant in error, in this branch of the argument, namely: that it was reasonable to rely upon the habits even of the blackman, for honesty, which were formed. and thus firmly fixed for such a length of time.

Lastly, we admit these books because Bailey well knowing, as he did, how this shop was kept and conducted, did impliedly agree to be charged in the manner against which he is now contending; and this alone would ing upon which to rest this doctrine.

No point was made to the Court below as to the comparison of the bill of particulars with the book of original entries, by two of the jurors, at the instance of plaintiff's attorney. It was done without objection. It is too late to except to it now.

[4.] In addition to the corroborative testimony of the plaintiff's customers, as to the probity of his shop books, was it incumbent to prove that the charges for the work done were usual and reasonable? Here the course of dealing had been established, the books of the plaintiff were before the jury, why insist on other *aliunde* evidence? We see no necessity for it. The proof as it then stood was sufficiently full to establish the plaintiff's demand.

Judgment affirmed.