# Wells Whip Company *v.* Tanners Mutual Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Evidence—Witness.*

In an action by a corporation on a policy of fire insurance for a total loss of a stock of goods and a building containing the goods, it appeared that about a year before the fire plaintiff had caused an inventory to be made of the stock then on hand. Plaintiff's secretary then testified that he knew of the value of the goods on hand at the time of the inventory; that the inventory was made under his direction by bookkeepers and clerks, and that

he, the treasurer, and manager of the plaintiff had subsequently verified it. There was evidence as to the value of the goods during the year after the inventory was made and also as to the value of the goods taken out. In order to reach the value of the goods at the time of the loss it was necessary to ascertain and deduct the percentage of gross profits represented in the manufactured product. For this purpose comparisons with the previous year were necessary. *Held*, that the secretary was competent to testify as to the accuracy of the inventory, and to refresh his memory from it in order to show in his opinion what was the percentage of net profits.

*Insurance—Fire insurance—Covenant—Production of books—Request for performance of covenant—Right to sue.*

Where a policy of fire insurance contains the usual covenants in regard to an examination under oath, production of books of account, bills, vouchers, invoices and certified copies at a place designated by the insurers, and the insurers have made no request for the performance of these conditions, they cannot at the trial successfully raise a question as to the right of the insured to bring the suit because of a violation of the covenant.

Where an insurance company calls upon the insured to produce at the trial stock and sales books and also bills for goods and it appears that the original bills and invoices were destroyed, the plaintiff cannot be convicted of neglect in refusing properly to answer the call, because he did not produce certified copies or duplicates of the bills.

Argued May 16, 1904. Appeal, No. 265, Jan. T., 1903, by defendant, from judgment of C. P. York Co., Aug. T., 1902, No. 62, on verdict for plaintiff in case of Wells Whip Company v. Tanners Mutual Fire Insurance Company. Before MITCHELL, C. J., DEAN, BROWN, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before W. F. BAY STEWART, J.

The facts are stated in the opinion of the Supreme Court.

At the trial when J. Milligan, secretary of plaintiff, was on the stand, the following offer was made :

Mr. Niles: Now I propose to ask the witness what was the value of the goods in this building covered by the item under consideration, at the time of the fire, and consumed by the fire November 15, 1901, for the purpose of sustaining the issue on the part of the plaintiff, and showing the amount due from the defendant to the plaintiff.

Mr. Wanner: This is objected to, that the witness has not shown such personal knowledge either of the cost of materials, finished products, or anything covered by the items in

this policy, as entitles him to give an opinion as to the gross sum of the plaintiff's damages caused by this fire. It appears already from the witness's testimony that his knowledge is not derived from purchasing or selling or personally superintending the manufacture of the articles, but solely from his inspection as secretary of the books and accounts of the company passing through his hands. The evidence is inadmissible for the purpose for which it is offered, and the witness is incompetent to make the desired estimate.

The Court: Q. Who kept these books? A. We had bookkeepers and clerks who assisted me in the keeping of the books.

Mr. Niles: Q. Were they under your control? A. Entirely.

Q. Had you anything to do with the checking up of the receiving of the goods, or goods when they were received? A. No, sir; our receiving clerk checked up the goods that came in. The bills checked up by him came into my hands before we paid for them.

The Court: I have some doubt about the admissibility of this evidence, but I will admit it, and give the defendant an exception.

Mr. Niles: Q. What was the value of the goods destroyed at that fire covered by this $15,000 item? A. $47,000.

Mr. Wanner: Defendant renews the objection to the witness as not competent to make this estimate and give this opinion.

The Court: I will admit the answer, and give the defendant an exception. [2]

The witness. $47,988.55.

Mr. Niles: The witness having stated that the value of the goods destroyed was $47,988.55, and having partially completed his explanation of the method by which he arrived at the result, we propose to ask him to go on and finish his explanation. He has stated that the total value that went into the building, and the item in question, from the time of the inventory, and including the inventory, up to the time of the fire was $140,373.10; and that during that period there was received for goods sold out of that building, and net receipts, in all $136,350.55. We propose to show that the $136,350.55 was in addition to the cost of the goods, the net cost, which was taken into consideration by him on the other side, and in-

cluded in the $140,373.10, included the profit of thirty-three and one third per cent; and, in order to arrive at the value of the goods on hand in the building at the time of the fire, it is necessary to deduct that profit from the total sales in order to ascertain the exact cost and the value of the property left, the amount of the property left at the time of the fire.

The Court: Well, it seems to me very clear that, having given the gross receipts, he must now show what the charge off was against those gross receipts, in order to arrive at the value of the property destroyed.

Mr. Wanner: It is objected, that the witness has shown no personal knowledge whatever of the cost of any of the finished products, or of the cost of labor and material entering them, or any such personal knowledge at all entering into the manufacture and sale of them, as entitles him to give an opinion of the general percentage of profits on the whole mass of the various kinds of goods contained in that factory at the time of the fire.

The Court: I will overrule the objection. I do not see it at all in the light mentioned by counsel for defendant. This man was the secretary of the company, and had charge of the books of the company, and knew what was bought and what was sold. What he is trying to do now is to show what the company had on hand. He has shown the gross receipts, and he must now make the proper charging off in order to arrive at what they had on hand. Exception to the defendant. [3]

Defendant made the following offer:

Mr. Wanner: Here is the call served on the other side: " You are hereby notified and required to produce at the trial of the above cause any and all books of account, stock books, sales books, and other books, bills of goods, merchandise and materials, purchased by said plaintiff during the years 1900 and 1901, and all other papers and memoranda which the said plaintiff has in its custody, possession or control, showing the cost and value of the property insured by the defendant and destroyed by fire at the factory of the said plaintiff in November, 1901."

\*     \*     \*     \*     \*     \*     \*     \*

Mr. Niles : There were a few duplicate bills obtained since the fire by officers of the plaintiff company. These are not

present in court, for the reason that they were not covered, in the opinion of counsel for the plaintiff, by the call, not being original papers, and not being complete, nor being a part of their records of their case.

Mr. Wanner: To which the defendant's counsel replies that the answer is not sufficient to the call, and admits the fact that there are in the plaintiff's possession bills of the very kind of purchases about which the witness is being examined, and which the defendant has a right to see, and has asked to see; and the court is respectfully asked to direct that the plaintiff shall get and produce in court under that call these bills showing finished goods and raw material purchased in 1901, which they have in their possession.

*    *    *    *    *    *    *    *

Defendant's counsel further proposes to show to the court in connection with this matter, by the expert himself, who is in court, to whose figures the witness has been referring, that the plaintiffs did have in their possession the books and bills and accounts showing purchases before the fire, and before the inventory, and the subsequent sales of both, the bills giving the materials about which the witness has been testifying, and about which defendant desires to cross-examine further, in connection with these books and papers.

The Court: The offer on the part of the defendant is overruled as being irregular and out of order. The answer made by the plaintiff is sufficient under the call, the papers in possession of the plaintiff being duplicate bills, not being in the call; and papers which would not be admissible in evidence if offered by the defendant.

Exception for the defendant. [7]

Mr. Wanner: Your honor seemed to have some doubt about our right to call for duplicate copies of bills. I wish to read a clause from the policy:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost, at such reasonable place as may be

designated by this company or its representative, and shall permit extracts and copies thereof to be made."

I take it that the parties to the contract have had copies made as accurate as originals; and in view of the testimony of the witness on the stand as to the existence and production of them, defendant's counsel again asks the court to direct that the plaintiff furnish to the defendant's counsel the duplicate bills and other accounts and papers which were submitted to the expert who has testified to his adjustment of this loss, and the making up of the expert account already testified to by witnesses on both sides in this case.

The Court: The motion is refused for the reasons assigned when it was made before, and for the additional reason that there were no certified bills called for in the written call which I presume was served upon the plaintiff. That was a matter that the counsel for the defense had before them, and they could have called for certified bills if they had seen fit.

Exception for defendant.  [8]

Defendant presented this point:

4. The policy upon which the suit is founded requires the insured, as often as shall be required, to produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable price as may be designated by the defendant, or its representative. The plaintiff having failed to produce such bills, invoices and other vouchers, or certified copies in cases in which the originals were lost, in court, under the call of the defendant, exhibited to the court and offered in evidence in this case, the plaintiff has not performed its duty under the contract, and therefore cannot recover in this case. The verdict of the jury must therefore be for the defendant. *Answer:* This point is refused. It is drawn under this provision of the policy: " The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company, or its repre-

sentative, and shall permit extracts and copies thereof to be made."

Waiving the question of whether or not that provision in the policy applies to a proceeding in court such as this, where the method of requiring the production of papers stands upon a different footing, namely, upon the law itself, and not upon the private contract of the parties, the plaintiff was bound to furnish these things called for, and as specifically called for, but there was no call for any certified copies of any of these bills mentioned in the defendant's call, and the plaintiff cannot be turned out of court on a sharp technicality like that, because he did not produce things that were not specifically called for. [12].

Verdict and judgment for plaintiff for $16,187.50. Defendant appealed.

*Errors assigned* among other were (1, 2, 3, 7, 8,) rulings on evidence, quoting the bill of exceptions; (12) above instruction, quoting it.

*Frank R. Savidge*, for appellant.—The plaintiff should have produced the original and duplicate bills in its possession or which were procurable, as the best evidence and in answer to the call, and in conformity with the contract of insurance: Stevenson v. Hoy, 43 Pa. 191; Seibel v. Lebanon Mut. Ins. Co., 198 Pa. 106; Langan v. Royal Ins. Co., 162 Pa. 357; O'Brien v. Commercial Fire Ins. Co., 63 N. Y. 108.

The plaintiff did not produce a single witness competent to testify to the correctness of the inventory, or to the cost of materials purchased, or to the cost of the manufactured product or to the gross profits possible in the business or earned.

*Henry C. Niles*, with him *George E. Neff*, for appellee.

Opinion by Mr. Justice Thompson, June 15, 1904 :

The main element in determining the value of the property destroyed by the fire for which appellant under its policy became liable to pay appellee, in consequence of a total loss, was the percentage representing what is known as gross profits to be deducted from the book or sales valuation of the manufactured goods taken from the factory during the year just pre-

vious to the fire.    Appellee's factory was destroyed by fire on November 15, 1901, and the result of the fire was the total destruction of it and its contents.    Appellee on November 30, 1900, made an inventory containing the value of the goods that were then in the factory and its aggregate was $47,848.17. Between such date and that of the fire there went into the factory for materials and other charges the sum of $95,524.33. Thus in the factory the total valuation of the property represented as being there within the period specified was an aggregate of $140,373.93.    But during such period the product manufactured there, after deducting discounts, returns and allowances, represented a book or sales valuation of $136,350.55. In such valuation however was included what is designated "gross profits," gross profits being the difference between the sum named and certain costs and expenses of production, the actual net profits being such profits as finally remain after deducting all costs and incidental charges and expenses of every kind and description.    Therefore in order to ascertain the value of the goods taken from the factory during the year of the fire and represented in such manufactured product it became necessary to deduct the percentage that represented the gross profits from the book valuation of sales, and so deducting, the residue left, together with the aggregate represented by the inventory as being there at the commencement of the year, would indicate the value of the property destroyed by the fire.

The appellee contended that such percentage was thirty-three and one third per cent and amounted to the sum of $45,450.18.    That with this deduction from the book or sales valuation, to wit: $136,350.55, there was thus shown that $90,900.37 was the actual amount of material, etc., taken out of the factory during the year of the fire and represented by the manufactured product.    That deducting this latter sum from the aggregate of $140,373.93 which represented valuation which had gone into the factory up to the date of the fire, the residue represented the actual valuation there at the time of the fire, to wit: $49,472.13, and allowing a deduction from this of three per cent for depreciation, etc., the actual value became $47,988.55, and therefore the property destroyed by fire was $47,988.55.    The aggregate of appellee's insurance in different

companies was $44,238.18, a sum somewhat less than the above loss and consequently appellee's claim for loss was the sum above indicated, and such being the case it was entitled to recover in this action the full amount of its policy.

Appellant's contention was that appellee's proofs in support of such claim were not sufficient to establish it and was directed especially to the quality of the proofs relating to the inventory and to the percentage of gross profits. The evidence does not warrant the conclusion that there was any bad faith shown or any misrepresentation made by the appellee. Soon after the fire an expert accountant representing the insurance companies, including appellant's representative met the officers of the appellee, and made a careful examination with them for the purpose of ascertaining the extent of the loss occasioned by the fire. He states that appellee furnished him with such books, papers and accounts as had not been destroyed and that he examined them and they were sufficient for him to make up a statement of the loss. His figures representing the amount of the loss were substantially the same as those of appellee except the amount to be deducted for percentage to represent gross profits. If he had made the deduction of thirty-three and one third per cent as claimed by appellee they would have been substantially the same. The extent of the loss by fire therefore practically turned upon such percentage. If the same was a smaller percentage, that would indicate a larger amount of materials taken out during the year, but if the percentage was larger that would represent a smaller amount of goods taken out as represented in the manufactured product, and therefore a larger amount on hand at the time of the fire. Appellant claimed that such percentage should not exceed twenty-six per cent while appellee contended that it was in fact not less than thirty-three and one third per cent. The secretary of the company testified that he had been twenty-two years in the business and that he knew that the value of the goods in the factory in November, 1901, was $47,988.55. He testified that he had personal knowledge of it derived from the books of the appellee and from an inventory made by the company at that date. That he had such knowledge from his bookkeepers and clerks who assisted him in keeping the books that were entirely under his control. That when

the inventory was made that he and the treasurer and manager of the company verified the figures and were satisfied they were correct and he positively testified that the amount of goods were in the factory as represented by the inventory. It is evident from his own knowledge and from that based upon the books under his control and from that possessed at the time the inventory was made, he was competent to testify to the value of the property destroyed. Certainly while testifying he would have been warranted in refreshing his memory by a reference to the inventory made up under his supervision and by his direction, as to the accuracy of which there was not the slightest question and so demonstrated upon cross-examination. Appellant's objection that this proof was secondary, because the men who actually counted the articles and weighed the materials were not called lacked substance, for the reason that the inventory was made under the directions of the witness and was duly verified by him. It accordingly represented the value of the goods on hand at the date in question and it was clearly made for that distinctive purpose only. With the inventory before him to refresh his memory, with his personal knowledge that the figures therein contained were true, his evidence as to the value of the property was competent and the accuracy and truthfulness of it were for the determination of the jury.

With goods to the value as testified by him as being there at that time and with the subsequent value added during the year, there was a total representing a sum of $140,373.10, but there was represented in the manufactured product as taken out of the factory during the year, a book or sales valuation amounting to $136,350 55, but in order to reach the exact amount of materials, etc., so taken out of the factory, and represented in the manufactured product, the percentage of gross profits must necessarily be deducted. Because in the year previous to the fire the percentage was twenty-six and a fraction per cent, such percentage was relied upon by the appellant as the proper basis for the year of the fire, but appellee's witnesses testified that the percentage of gross profits was larger during the year in which the fire occurred, because during the year previous the prices were cut the greater part of the year, and during the year of the fire, there was a fixed

basis for them, and salesmen were not allowed to sell below that price and orders were not accepted below a certain price; that there was an organization known as the Whip Manufacturers' Association which fixed the prices and appellee was not allowed to sell for less; that it made a minimum selling price and appellee made its own maximum selling price; that this minimum selling price was in excess of the price of the year before; that the year preceding the fire there was quite a portion of the year where orders were filled at low prices, owing to the fact that customers had placed their orders in anticipation of this advance.

Accordingly appellee's witnesses testified that the percentage to be deducted was thirty-three and one third per cent. The question therefore upon the proofs was one of fact for the jury and the learned trial judge so left it. The evidence warranted its submission to them and a refusal to do so would clearly have been error. The jury having found that the percentage established by the proofs was thirty-three and one third per cent, the appellee was entitled to a verdict for the full amount of its policy.

The policy contained the usual covenant in regard to an examination under oath, production of books of account, bills, vouchers, invoices and certified copies at a place designated by the insurers. Prior to the trial appellant made no request for the performance of these conditions and hence it follows that no question could have been successfully raised as to the right to bring the present suit in consequence of the neglect or refusal of appellee to comply with a request to perform these conditions when made by appellant. When there has been a neglect or refusal to comply with such conditions, they being made an essential to the right to sue, such refusal or neglect has operated to defeat recovery, but in the present case no such question of right to sue can be raised. After suit was brought and before trial the usual notice was served upon appellee to produce upon such trial stock books and sales books, also bills for goods purchased by the appellee during 1900 and 1901. The original bills and invoices were destroyed. Appellee entered in its merchandise account simply the amounts of purchases without the names of the vendors and such duplicates as they had were submitted to the ac-

countant. The learned trial judge very properly ruled that the call had been complied with and that it did not apply to duplicates. There was no refusal or neglect in the first instance such as would operate to defeat the right of recovery and there was none in the second instance that could in any manner affect the same.

In view of the conclusion that there was no substantial error in the ruling of the learned trial judge in regard to the main questions involved it becomes unnecessary to discuss the subordinate assignments of error.

The assignments of error are not sustained and the judgment is affirmed.