## NAVARRE et ux. v. HONEA et al.

No. 2856.  Opinion Filed February 28, 1914.

(139 Pac. 310.)

1. **EVIDENCE—Documentary Evidence—Daybook.** Where, in a mercantile business, the usual course is for each salesman, at the time of the sale, to make a memorandum thereof in the form of a "credit ticket," with carbon copy then delivered to the purchaser, and, at the end of each day, to deliver to the bookkeeper the original of such ticket, from which, on the same or next following day, the bookkeeper correctly, and in the usual course of said business, enters same in a daybook, such daybook is admissible in evidence, upon the testimony of the bookkeeper alone to the facts hereinbefore recited, under section 4277, St. Okla. 1893 (section 4574, Wilson's Rev. & Ann. St. 1903; section 5907, Comp. Laws 1909; section 5114, Rev. Laws 1910), if such daybook is a book of original entry.

2. **SAME—"Books of Original Entry".** Books of account, consisting of entries made at or near the time of the transactions to which they relate, and made directly from reports of salesmen in the form of written memoranda not compiled or preserved in book form nor otherwise in respect to convenience similarly available, are books of original entry.

3. **SAME—Books of Account—Probative Effect.** A book of account, when admissible in evidence, even though free from inherent improbability, is only presumptive and disputable evidence of the correctness of the entries therein appearing.

(Syllabus by Thacker, C.)

*Error from County Court, Oklahoma County;*
*Sam Hooker, Judge.*

Action by John W. Honea and Travis Williams against Louis M. Navarre and Julia Navarre, on account. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Winn & Brill,* for plaintiffs in error.

*A. J. Carlton* and *Embry & Hastings,* for defendants in error.

Opinion by THACKER, C. Plaintiffs in error (who are husband and wife) will be designated as defendants, and defendants in error (who are copartners) will be designated as plaintiffs, in accord with their respective titles in the trial court.

Plaintiffs sued and, upon the verdict of a jury, recovered judgment in a justice's court for $151.87, as a balance on account, and, upon trial *de novo* in the county court on appeal, again recovered judgment, upon the verdict of a jury, but only for the sum of $105. Defendants denied some of the items charged against them in the account, and alleged payment in excess of the others.

Upon the trial, on issues thus made, the court, over objection, admitted as evidence plaintiffs' daybook, upon the testimony of the bookkeeper to the effect that the entries of sales therein, as charges against defendants, were correctly made by him, at the end of each day of such sale or on the day next following, from unproduced and unaccounted for "credit tickets" made by the two plaintiffs, as principal salesmen, and by a little "extra help," including said bookkeeper, as occasional salesman, as memoranda of the credit sales made by them, and turned in to the bookkeeper by them at the end of each such day; and it further appears from the testimony of such bookkeeper that all this was in the usual course of plaintiffs' business as merchants, and still further it appears that at the time of and with each credit sale the usual course and custom of such business required that the salesman should make and deliver to the purchaser a carbon copy of such credit ticket.

There was no proof that the credit tickets themselves were true and correct, other than may be found in the receipt of the tickets by the bookkeeper from the salesmen in the usual course

of the business and the aforesaid methods and course of business in respect to making such tickets and delivering such carbon copies thereof at times of sales; and, aside from the aggregate result of numerous admissions of correctness of items charged in the testimony of one of defendants not shown in either brief, the verdict and judgment are affirmatively supported only by the testimony of the bookkeeper as to the correctness of the entries made by him in such daybook from such tickets and as to the usual course and the methods of plaintiffs' said business, together with the testimony of one of the plaintiffs and of a justice of the peace that one of the defendants, Mrs. Navarre (who apparently was the one in the better position to know, and who alone, by testimony, disputed any item charged in the account), before the trial had in the justice court, if not before suit was commenced, admitted the indebtedness as charged, except that she did not think she got a few little items so charged, and further stated that, if the other one of the plaintiffs had not made her mad, the account would have been paid.

It appears that almost, if not quite, all the purchases, not made by Mrs. Navarre in person, were made by defendants through the agency of their sons and daughters, who were not produced as witnesses.

Mrs. Navarre, in her testimony, denied that she purchased many of the items charged, denied that any of the family purchased others, expressed doubt as to the purchase of others, and admitted the purchase of the others.

Both defendants testified as to payments for which they claimed credits not given in the account.

The alleged error in admitting the daybook in evidence goes only to the charges entered against defendants from the credit tickets.

The record does not disclose that any inconvenience would have resulted from requiring the production of the testimony of the bookkeeper's informants, especially the testimony of the two plaintiffs and of the bookkeeper himself to the extent of their

knowledge, to the effect that the credit tickets turned in to the bookkeeper truly and correctly represented proper charges for merchandise sold and delivered to defendants.

In the absence of a statute to the contrary, the general rule appears to have been and to be that before books of account, produced by the entrant, are admissible as evidence, it must appear that the entrant had personal knowledge of the truth of the entries when he made them, and that they were correctly made by him, or, if made upon information derived from another, it must appear that the information itself was true and correct, so that, under such circumstances, the testimony of the entrant must be reinforced by that of his informant, unless such informant is dead, absent from the jurisdiction, or otherwise unavailable. The Modern Law of Evidence (Chamberlayne) sec. 3074; Wigmore on Evidence, secs. 657, 1530; Elliott on Evidence, sec. 462; *Schnellbacher v. McLaughlin P. Co.,* 108 Ill. App. 486; *Atlas Shoe Co. v. Bloom,* 209 Mass. 563, 95 N. E. 952; *Kent v. Garvin,* 1 Gray (Mass.) 148; *Jackson v. Evans,* 8 Mich. 476; *Paine v. Sherwood,* 21 Minn. 225; *Rothenberg v. Herman,* 90 N. Y. Supp. 431; *Ives v. Waters,* 30 Hun, 297; *Venning v. Hacker,* 2 Hill (S. C.) 584. However, there are cases to the contrary. See *Bailey v. Barnelly,* 23 Ga. 582; *Taylor v. Tucker,* 1 Ga. 231; *Groschell v. Knoll,* 10 Ky. Law. Rep. 314; *Kline v. Gundrum,* 11 Pa. 242; *Jones v. Long,* 3 Watts (Pa.) 325.

In Wigmore on Evidence, sec. 1530, p. 1895, in discussing exceptions to the rule rejecting hearsay, in respect to the necessity of showing the entries to be true and correct by the testimony of the entrant and his informant, it is said:

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclu-

sion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the courtroom. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who, as attorneys, have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical."

See the following cases cited by the author as supporting the text just quoted: *Fielder v. Collier*, 13 Ga. 499; *Nelson v. Bank*, 69 Fed. 805, 16 C. C. A. 425; *Continental National Bank v. First Nat. Bank*, 108 Tenn. 374, 68 S. W. 497; *United States v. Cross*, 20 D. C. 379; *Donovan v. B. & M. R. Co.*, 158 Mass. 450, 33 N. E. 583; *Northern P. R. Co. v. Keyes* (C. C.) 91 Fed. 47; *United States v. Venable C. Co.* (C. C.) 124 Fed. 267; *Dohlmen Co. v. Niagara F. Ins. Co.*, 96 Wis. 38, 71 N.,W. 69; *Firemen's Ins. Co. v. Seaboard A. L. Co.*, 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517; *State v. Stephenson*, 69 Kan. 405, 76 Pac. 905, 105 Am. St. Rep. 171, 2 Ann. Cas. 841; *Louisville & N. R. Co. v. Daniel*, 122 Ky. 256, 91 S. W. 691, 3 L. R. A. (N. S.) 1190; *Madunkeunk D. & I. Co. v. Allen C. Co.*, 102 Me. 257, 66 Atl. 537; *Wells Whip Co. v. Tanners' N. F. Ins. Co.*, 209 Pa. 488, 58 Atl. 894; *Pelican Lumber Co. v. Johnson*, 44 Tex. Civ. App. 6, 98 S. W. 207; *Grunberg v. U. S.*, 145 Fed. 81, 76 C. C. A. 51.

At best, books of account are only presumptive and disputable evidence; and, even where the entrant testifies he correctly made the entries from personal knowledge of the transac-

tions entered or from information which his informer testifies
was truly and correctly given from personal knowledge at the
time, neither the court nor the jury are bound to accept such
entries as true and correct, unless free from inherent improba-
bility, and unless unimpeached and uncontradicted by other evi-
dence; and, in logical effect, the exception to the rule against
hearsay evidence, as quoted above from Mr. Wigmore, appar-
ently reposes on the trial judge the duty to exercise a sound dis-
cretion in respect to the admission of such books upon the testi-
mony of the entrant that in due time he correctly made the en-
tries from information received by him from proper sources in
the usual course of the business, without requiring the produc-
tion of the testimony of his informants as to the truth of the
information, where to do so would entail inconvenience out-
weighing the utility of same.

In connection with the consideration of whether and to
what extent inconvenience, on the one hand, and want of utility,
on the other hand, tends to justify the admission of such books
without producing the testimony of the persons having original
knowledge and giving the entrant the information from which
he made the entries, the trial court, in the absence of statute
to the contrary, perhaps should consider the nature and amount
of the account, the ease or difficulty with which the defendant
may disprove erroneous charges against him, and his prepared-
ness or unpreparedness in this regard so far as apparent, the
probability or improbability that the testimony of the original
informants will be of considerable value in respect to memory
after such lapse of time as has occurred, and, in connection with
all other considerations, the inconvenience and burden that would
be involved in requiring the production of such informants.

In the light of the foregoing, which is aside from any stat-
utory peculiarity, we come now to consider whether and to what
extent section 4277, Stat. 1893 (section 4574, Wilson's Rev. &
Ann. St. 1903, section 5907, Comp. Laws 1909, and section 5114,
Rev. Laws 1910), which is applicable in the present case, extends
the exception to or otherwise changes the aforesaid general rule.
Said section reads:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county."

The statute thus specifies only the oath of the available entrant as a means of proof, and seems to contemplate that sufficient proof of correctness of entries in books of account may be made by the entrant alone; and in many, if not most, instances such proof by the oath of the entrant can at best only be made by his testimony that in the usual course of business, and in due time, he correctly made the entries from information derived from proper sources. This view is in practical accord with and (notwithstanding it is generally presumed that a statutory enactment is intended to change the existing law as stated in *Reed v. Goldneck,* 112 Mo. App. 311, 86 S. W. 1104) is, perhaps, not weakened by the fact that in Rev. Laws 1910, which did not go into effect until May 16, 1913, this section of the statute appears (as section 5114) with the addition of the following words next after a comma which now takes the place of the former period at the end of the old section: "Or upon proof that the same were made in the usual course of business" —thus recognizing the probative force inherent in the "usual course of business," and making it alone sufficient evidence of correctness to admit such books. The case of *Drumm-Flato Com. Co. v. Edmisson,* 17 Okla. 344, 87 Pac. 311, does not appear to be in conflict nor inconsistent with this view.

The book in which the entries are first permanently made, which is usually the daybook, is the book of original entry, notwithstanding prior individual memoranda designed to serve the temporary purpose of a report from which the bookkeeper may and does, at or near the time of each transaction reported, make entry in the daybook. The Modern Law of Evidence, by Chamberlayne, secs. 3085, 3086, 3087, and 3091; Wigmore on Evidence, secs. 1548 and 1558; Elliott on Evidence, secs. 459 and 461; Jones on Evidence (2d Ed.) secs. 569 and 370.

When a daybook is kept, as in the present case, the credit tickets, we assume, are not usually compiled or kept in book form, so as to be of the requisite permanent character and conveniently available to show the items and state of the account.

At the trial there was no denial of the evidence tending to show that defendants received carbon copies of the credit tickets from which the book entries were made, nor explanation of failure to produce them. Defendants' early knowledge of the contents of the account and the result of the first trial must have sufficiently warned them of the necessity of and how to make preparation to meet and disprove errors in such account at the long subsequent trial from which this appeal was taken. The absence of the testimony by the bookkeeper's informants, to the effect that the credit tickets delivered to the bookkeeper were true and correct, militated in natural reason and was probably so considered by the jury against the probative force of the entries in the book admitted. The brief of defendants does not show, by analysis of the evidence, to what further extent, than they did, the jury might properly have reduced by their verdict plaintiffs' demand, even if they had been instructed to disregard the book entries as evidence, or those entries had not been admitted in the first instance, and the jury had had for basis of verdict only the other evidence in the case, does not show whether and to what extent the admission of the daybook, if error, was harmful, in view of the testimony of defendants, especially that of Mrs. Navarre, and, in respect to the admission of these book entries, it does not appear but that defendants had a fair trial in the court below.

The only other error urged in defendants' brief appears to be probably of minor importance, and is not so specifically and clearly presented as to require consideration.

We are of opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.