## HEMISPHERE OIL & GAS CO. v. OIL WELL SUPPLY CO. et al.

No. 13744—Opinion Filed Sept. 23, 1924.

Rehearing Denied Nov. 12, 1924.

### 1. Evidence—Entries in Books of Account.

Entries in books of account are admissible in evidence upon proof that they were made in the usual course of business of the person, firm, or corporation whose accounts are in question.

### 2. Mechanics' Liens—Amendment of Lien Statement.

The amendment of a lien statement, previously filed in the office of the court clerk, is within the discretion of the trial court.

### 3. Same—Misdescription—Lien on Oil Property — Purchasing Corporation as Innocent Purchaser.

Where a corporation is organized for the purpose of taking over a producing oil and gas lease belonging to another company, and, as the only consideration therefor, issues shares of its stock to the shareholders of the old company in lieu of the shares held by them in the old company, the new corporation is not an innocent purchaser for value without notice of a materialman's lien against the lease, although the lien statement on file in the office of the court clerk did not correctly describe the land.

### 4. Evidence—Admission of Assignor Admissible Against Assignee.

Proof of statements made by the holder and owner of a producing oil and gas lease that the account rendered for materials furnished him for use in the development and operation of the lease was correct, and that the materials were used in the development and operation of the lease was properly admitted in evidence as against his assignee.

(Syllabus by Ray, C.)

Commissioners' Opinion. Division No. 1.

Error from District Court, Okfuskee County: John L. Norman, Judge.

Action by Oil Well Supply Company, a corporation, against George H. Currier, Joseph Levy, E. B. Stern, Mrs. J. Hopwood, Hemisphere Oil & Gas Company, and Minnetonka Lumber Company. Judgment for plaintiff and cross-petitioner, and the defendant Hemisphere Oil & Gas Company appeals. Affirmed.

L. E. Roach and D. G. Bailey, for plaintiff in error.

M. A. Dennis, for defendant in error Douglas Tank Company.

Martin L. Frerichs and J. B. Bartlett, for defendant in error Oil Well Supply Company.

Opinion by RAY, C. The various assignments of error are presented under four general heads, as follows:

(1) The trial court erred in admitting evidence on the part of the defendant in error, Oil Well Supply Company.

(2) The defendant in error Oil Well Supply Company should not have been permitted to amend its lien statement to include the property of the Hemisphere Oil & Gas Company.

(3) The trial court should have found that the Hemisphere Oil & Gas Company was an innocent purchaser.

(4) The judgment is not sustained by the evidence, and is contrary to law.

1. It is contended that a proper foundation was not laid for admitting in evidence certain books of account upon which plaintiff relied. Plaintiff was engaged in the business of selling oil well supplies with stores located at different points in the state with the head office in Tulsa. Under plaintiff's system of keeping accounts the salesmen at the different stores made what is called "counter tickets," or invoices of the sale, and these counter tickets were forwarded to the head office in Tulsa where entries of the sales were made in other books. The witness was the district credit man and collector, and the proper custodian of the books of account. These counter tickets admitted in evidence were made at the stores in Tulsa, Henryetta, and Okmulgee. The witness did not know of his personal knowledge that the sales were made or that the entries were made at or near the time of the transaction to which they related. At the time of the trial, the salesmen were not in the employ of the company and were not in the county where the case was being tried. As to a number of these counter tickets the witness could not identify the signature of the persons who made the entries. He testified as to the plaintiff's system of keeping accounts and that the counter tickets came to him in the usual course of business of the company. The question here is, Did this proof render the counter tickets competent as evidence? Section 653, Comp. Stat. 1921, is controlling:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries in case of his death or absence from the county, or upon proof that the same were made in the usual course of business."

A number of decisions of this court are

cited where this section was construed as it existed prior to the 1910 revision of the statutes. In the revision the last clause, "or upon proof that the same were made in the usual course of business," was added. With the growth and development of modern business new and different systems of keeping accounts have come into use. The incorporation in the section of the clause just quoted was evidently for the purpose of adapting the law to the more modern methods of keeping accounts. Prior to the 1910 revision, in order to make books of account competent as evidence, it was necessary to be made to appear by the oath of the person who made the entries that such entries were correct, and were made at or near the time of the transaction to which they related, or, if the one who made the entries was dead or absent from the county, it was necessary to prove his handwriting. The added clause furnishes another way of proving their competency as evidence, that is, proof that the entries were made in the usual course of business. That presents for consideration the question, What is meant by the phrase, "in the usual course of business?" It is well known that business concerns usually have methods of keeping accounts suitable to their several businesses. A system of accounting suitable to one form of business may not be adaptable to another. We think the phrase, "in the usual course of business," means in the usual course of business of the person, firm, or corporation whose accounts are in question. Whether the system of accounting adopted and used by the person whose accounts are in question is perfect or imperfect is not material. The skill or want of skill in keeping accounts is not the question. That goes to the weight and value to be given the evidence after being admitted. As was said by Justice Thacker in Navarre v. Honea, 41 Okla. 480, 139 Pac. 310:

"A book of account, when admissible in evidence, even though free from inherent improbability, is only presumptive and disputable evidence of the correctness of the entries therein appearing."

The only case cited by plaintiff in error where the present statute has been construed is that of Schaap v. Williams 99 Okla. 21, 225 Pac. 910. In that case the question here under consideration was not before the court. In that case it appears that in the absence of the express agent who was responsible for the record entries in the books of the express company, the witness undertook to detail what was shown by certain records of the express company with reference to certain disputed shipments. The question here under consideration, that is, whether proof that the entries were made in the usual course of business made the entries competent evidence, was not before the court and not under consideration.

Complaint is made of the admission in evidence of certain office copies of letters and answers thereto. The case was tried to the court. There were a number of parties to the action other than those involved in this appeal. The court announced that evidence admitted during the trial might be material as to some of the parties and not as to others, and that in reaching a conclusion he would consider only that evidence competent and material. We think, after reviewing the evidence, that the documents complained of were not material evidence, and the question of their competency will therefore not be decided.

2, 3. George H. Currier, doing business under the name of Geo. H. Currier and the Currier Company, was the owner of a producing oil and gas lease upon the S. W. quarter of sec. 11, township 11, range 11, in Okfuskee county. This was the only oil and gas lease owned by Currier or the Currier Company in Okfuskee county. This suit was to recover judgment for oil well supplies furnished to Currier and the Currier Company, and to foreclose a materialman's lien upon the lease. A lien statement properly filed within the time allowed by law incorrectly described the land, but described it as being the N. E. quarter of the S. W. quarter instead of the S. E. quarter of the S. W. quarter. Before this suit was commenced the lease was assigned by Currier to the defendant Hemisphere Oil & Gas Company, plaintiff in error. The plaintiff, in its petition, made the Hemisphere Oil & Gas Company a party defendant, and asked leave to amend its lien statement to correctly describe the land, which was permitted over the objection of the Hemisphere Oil & Gas Company. The amendment of the lien statement was within the discretion of the trial court. In Alberti v. Moore et al., 20 Ok'a. 78, 93 Pac. 543 it was said in the syllabus:

"Where, in an action foreclosing a subcontractor's or materialman's lien, in which the original statement filed inaccurately states the name of the party sought to be charged, and erroneously describes the property intended to be subjected to the lien, the court in the exercise of its discretion, and in the furtherance of justice, may allow such lien claimant to file an amended statement, and foreclose the same."

But it is contended that the Hemisphere Oil & Gas Company was an innocent purchaser for value and without notice of the lien of the plaintiff. The evidence does not show that the Hemisphere Oil & Gas

company was a purchaser for value, but, on the contrary, the evidence shows the transaction to have been the taking over of one company by another. There was no cash consideration or transfer of any other property. 166,000 shares of stock of the Hemisphere Oil & Gas Company were issued to the stockholders of the old company in consideration of the transfer of this property. This appears to have been the merging of two companies or the absorbing of one by the other. The old stockholders became stockholders in the absorbing company, organized for the purpose of taking over this particular property and other properties of Currier and Currier & Company. It was not a sale and the new company was not an innocent purchaser for value without notice. Skirvin Operating Co. v. Southwest Elec. Co., 71 Okla. 25, 174 Pac. 1069; Collinsville National Bank v. Esau et al., 74 Okla. 45, 176 Pac. 514; American Railway Express Co. v. Sneed, 96 Okla. 278, 221 Pac. 1032.

4. The other contention is that proof of the admission by George H. Currier that the account of the Oil Well Supply Company was correct, that he had received the materials charged to him by that company, and that they were used in developing and operating the lease, was hearsay and not admissible as against the Hemisphere Oil & Gas Company. We cannot agree with that contention. At the time the admissions were made Currier was the owner and in control, and the admissions made were admissions against his interest. The object of judicial proceedings is to ascertain the truth. Admissions against interest have always been admitted upon the theory that one is not likely to make untrue admissions against his interest. Such an admission is not less likely to be truthful by reason of the one making it later becoming a disinterested party.

"***Admissions made by one, who at the time held the legal title, to the effect that he had contracted by parol to sell the same to another and had received the pay therefor are competent evidence against all persons claiming title under or through him. The principle on which such evidence is received is that the declarant was so situated that he probably knew the truth, and his interests were such that he would not have made the admissions to the prejudice of his title or possession, unless they were true." Jones on Evidence (2nd Ed.) par. 240.

"The admissions of one who is privy in title stand upon the same footing as one who is privy in obligation. Having precisely the same motive to make correct statements and being identical with the party in respect to his ownership of the right in issue, his admissions may, in fairness and principle, be prefered in impeachment of the present claim. * * * This principle is to-day nowhere denied. But its recognition was slow in coming. Of the fundamental and common doctrines of our law of evidence, this was perhaps the latest to secure judicial recognition." Wigmore on Evidence, par. 1080.

"Declarations of an owner of land prior to his conveyance are competent as against his grantee and other privileges, in disparagement of his title. They are also competent to show the existence of easements on the premises." 16 Cyc. 986.

"Statements made on his own knowledge by a former owner of real estate are competent against one who claims under him by an interest acquired since the declaration was made, unless the latter is so situated that the fact stated, if true, cannot affect him, as in case of a purchaser for value without notice." 22 C. J. 356.

This rule was recognized by this court in Globe & Rutgers Fire Ins. Co. v. Creekmore, 69 Okla. 238, 171 Pac. 874:

"Admissions made by one who at the time held the legal title, to the effect that he had contracted by parol to sell the same to another, and had received the pay therefor, are competent evidence against all persons claiming title under or through him."

It is also contended that the court erred in admitting in evidence the lien statement of the Douglas Tank Company, defendant and cross-petitioner, and in decreeing its judgment to be a lien upon the same property. In the brief of plaintiff in error it is said:

"The above assignments of error go to the validity of the lien statement and may here be presented jointly.

"The record discloses that on December 24, 1920, George H. Currier was the owner of the oil and gas mining lease in question. The defendant in error and cross-petitioner, Douglas Tank Company, claims that on said date they had an agreement with him in regard to the sale of material to be used on the lease in question, and on said date sold to him two (2) 250-barrel tanks of the value of $590, and that on May 27, 1921, they made a sale of the third tank in the sum of $185."

The only contention not above disposed of is that the three oil tanks were not furnished under one contract but under two separate and distinct contracts. The statutory time of four months for filing lien statement for the two tanks had expired before the last tank was furnished. The latter tank was delivered to the Hemisphere Oil & Gas Company after it came into possession of the lease and it is not brought in

question. The contention is that the last tank was bought by the Hemisphere Oil & Gas Company under a separate contract and would not operate to extend the time for filing lien statement for the two tanks first delivered to Currier. Plaintiff in error has not favored us by setting out in its brief the evidence upon which it relies to sustain this contention or by telling us where such evidence may be found. The lien statement shows that all the tanks were sold and delivered under one oral contract.

The judgment should be affirmed.

By the Court: It is so ordered.