## HARSHA v. MOCK.

No. 19110.   Opinion Filed Oct. 22, 1929.

R. M. Mountcastle, for plaintiff in error.

Malcolm E. Rosser, for defendant in error.

JEFFREY, C. This was a suit by Susan Mock, formerly Susan Rhea,, as plaintiff, against Hoy Harsha, as defendant, for contribution by reason of the payment of a deficiency judgment by plaintiff growing out of a liability on a promissory note signed by plaintiff, defendant and others. The bill of complaint alleges that on June 26, 1917, plaintiff, Everett P. Rhea, then plaintiff's husband, W. M. Briscoe and defendant executed in favor of the Walton Trust Company, a promissory note for the sum of $2,400, which bore interest at six per cent., and matured June 26, 1924. It was further alleged that Everett P. Rhea then held the legal title to about 140 acres of land; and that he, joined by plaintiff, executed a real estate mortgage on said land for the purpose of securing the payment of said note. It is alleged that plaintiff had no interest in the land either as a homestead or otherwise; that she was informed and believed that the defendant was, at the time of the execution of said mortgage and note, the equitable owner of an undivided one-fourth interest in said land, and that W. M. Briscoe was the owner of an equitable interest, the exact amount being unknown to her. Plaintiff further alleged that since the execution of said note and mortgage, her former husband, Everett P. Rhea, died, and that W. M. Briscoe became insolvent, was duly decreed a bankrupt, and legally discharged as such; that on or about May 2, 1924, the holder of the mortgage brought suit for judgment upon the note and for foreclosure of the mortgage in the district court of Wagoner county; that plaintiff was the only defendant named in said foreclosure suit; that the mortgage was duly foreclosed, the land sold at foreclosure sale for the sum of $2,500, and a deficiency judgment in the sum of $1,284.40 was rendered against her. Plaintiff alleged that she was compelled to pay the amount of the deficiency judgment in order to save other property from execution, and then prayed for judgment against defendant for the sum of $642.20. The allegations of the petition were duly denied by the defendant. The defendant also alleged in his answer that Everett P. Rhea was the principal on the note; that upon his death plaintiff became his heir at law, and that the deficiency judgment was a proper charge against said estate in her hands. The cause proceeded to trial to the court on July 8, 1927. At the conclusion thereof, the trial court found that W. M. Briscoe was, in fact, the principal upon the note given to the Walton Trust Company on the 26th day of June, 1917; that plaintiff, Everett P. Rhea, and the defendant were cosureties, and that defendant should be compelled to contribute to plaintiff one-third of the amount of the deficiency judgment paid or the sum of $428.13, for which amount

judgment was rendered. From this judgment, defendant has appealed.

The first assignment of error presented is that the trial court erred in overruling defendant's demurrer to plaintiff's evidence, and in refusing to render judgment for defendant. Plaintiff's evidence discloses that she personally knew nothing about the execution of the note and mortgage except that each of the four parties signed the note, and that she and her husband signed the mortgage. W. M. Briscoe, as a witness for plaintiff, first testified that, at the time the note and mortgage were executed, he did not own any interest in the land and received no benefit from the loan, but merely signed as an accommodation surety. He stated that he did not know whether defendant owned any interest in the land or not. Thereupon, counsel for plaintiff exhibited to the witness, Briscoe, a letter which had been written by him to the Walton Trust Company about the time the note and mortgage were executed. Briscoe was agent for the Walton Trust Company, and took the application upon which the loan was made. The letter does not appear in evidence, but reference made to it by the witness and counsel indicate that Briscoe informed his principal that he owned an undivided one-half interest in the land, and defendant and Everett P. Rhea owned the other one-half interest. Upon examining the letter, which was exhibited to the witness for the purpose of refreshing his memory, he answered as follows:

"I would say that at that time I owned a half interest, and Rhea a quarter interest and Mr. Harsha a quarter interest, if these facts are true, and I suppose they are."

He further testified that he was in possession of the facts at the time he wrote the letter, and had no reason to make the statements unless he knew them to be true at that time. The evidence further shows that Everett P. Rhea, on January 15, 1917, executed to Briscoe a quitclaim deed to his entire interest in the land. This deed was in existence at the time the note and mortgage were executed, but was not placed of record until April 22, 1918. Briscoe testified that he could not remember any particulars about the transaction, but remembered that he and Rhea at that time made a practice of carrying each other's titles to real estate. On August 7, 1917, Rhea executed a deed to an undivided one-fourth interest to the defendant, Harsha. In December, 1917, Harsha deeded his one-fourth interest in the land to Briscoe. Briscoe then held the entire title to the land, which he retained. Counsel says

that at the time the demurrer was interposed, there was no evidence tending to show that defendant had any interest in the land, except the testimony of Briscoe, and because of his contradictory testimony, the evidence, if proper, had no evidentiary value. The loan transaction had occurred about ten years prior to the date of the trial, and it is not likely that one's independent recollection of the details surrounding the transaction would be accurate. The testimony based upon the letter, no doubt, was very convincing to the trial court. The record does not disclose upon what theory the demurrer was overruled. It may have been upon the theory that plaintiff and defendants were cosureties. Upon either theory, we cannot conclude that the ruling of the trial court was not sufficiently supported by the evidence. But we think there is ample evidence to withstand the demurrer and to support the finding and judgment of the trial court.

The next assignment of error is that the trial court erred in admitting certain evidence offered by plaintiff over the objection of the defendant. Under this assignment, counsel contends that it was error to permit the witness, Briscoe, to testify from the letter which he wrote to the Walton Trust Company when the application was made for the loan approximately ten years prior to the date of the trial. The witness did not read the letter in evidence, but, upon request by counsel for plaintiff, he read the letter which he had written for the purpose of refreshing his memory as to who owned an interest in the land at the time the note and mortgage were executed. As heretofore stated, this witness first answered that he did not own any interest in the land at the time the loan was made. From an examination of his testimony, it appears that his memory on the subject was very faulty, or else he was at least an unwilling witness for plaintiff. Preliminary to refreshing his memory from the letter, he testified, in substance, that he knew the facts concerning the ownership of the land at the time the letter was written, and that he had no reason or cause for stating anything but the facts. It is situations like this that give rise to the rule which permits witnesses to refresh their memories from memoranda while testifying. It appears to be a universal rule that if a witness testifies that he once knew the facts, and a memorandum was made at the time or soon after they transpired, which he knew to be correct, such memorandum may be used to refresh his memory although

he has no present recollection of the events. 28 R. C. L. 594; Kahn v. Traders Ins. Co.,˙ 4 Wyo. 419, 34 Pac. 1059; People v. McFarlane, 138 Cal. 481, 71 Pac. 568.

In this connection, it is also contended that it was error to permit one R. C. Burris to testify from an examiner's report covering the land. R. C. Burris was an agent for the Walton Trust Company at the time the loan in question was made, and it appears that he ·made an examination of the land, appraised its value, and made a report thereon to his company. This witness, by referring to the report and certain letters, testified to the amount of the loan, the amount of the commission retained by him, to whom the net amount of the loan was paid, and the amount of a then existing loan on the property. It appears that the witness was asked about some writing that appeared on the report, which he stated was not made by him. But the record does not show what this writing consisted of nor whether the witness gave any testimony based upon any writing which was not made by him. We see nothing about the testimony of this witness prejudicial to the rights of the defendant.

Under the foregoing assignment of error, it is further contended that the court committed error in permitting a witness by the name of Heinig to testify over the objection of the defendant concerning the bank account of W. M. Briscoe during the month of July, 1917. This witness gave no testimony regarding this matter which would be incompetent unless the bank record itself was incompetent as evidence. A ledger sheet from the records of the First National Bank of Muskogee, covering Briscoe's bank account for the month of July, 1917, was admitted in evidence for the purpose of showing that Briscoe received all of the proceeds of the loan and did not pay the same out to Rhea. The witness testified that he was in charge of the bookkeeping for the First National Bank in which Briscoe's account was kept during that period of time. He stated that he had been bookkeeper for about ten years; that he did not know whether he made up the particular ledger sheet or not, or who made it for the month of July, 1917, showing the deposits and disbursements on Briscoe's account. However, he testified that the ledger sheet was a part of the permanent record of the bank, and that there was nothing to indicate that it was differently kept from any other similar record in the bank. Entries in books of account are admissible in evidence when shown that the same were made in the usual course of business. Section 653, C. O. S. 1921; Hemisphere Oil & Gas Co. v. Oil Well Supply Co., 104 Okla. 83, 230 Pac. 245. We conclude that the ledger sheet was sufficiently identified as having been made in the usual course of business, and was properly admitted in evidence for the purpose of showing that Everett P. Rhea did not receive the proceeds of the loan, but was merely a surety on the note.

It is next contended that the judgment is not sustained by sufficient evidence, and is contrary to the law and evidence. The principal parts of plaintiff's evidence have already been stated, and it will be very briefly referred to under this assignment of error. The record discloses that on January 15, 1917, Everett P. Rhea, then the record owner of the land, gave Briscoe a deed covering the entire interest in the land, which deed was not placed of record until April 22, 1918. On June 26, 1917, several months after Rhea had deeded the land to Briscoe, he made application to the Walton Trust Company for a loan of $2,400 on the land. At the time the application was executed, Everett P. Rhea, plaintiff, Briscoe and defendant executed the note, and plaintiff and her husband executed the mortgage to secure the payment of the note. At the same time Briscoe represented to the Walton Trust Company that he owned a one-half interest in the land and Rhea and defendant owned a one-fourth interest each. Briscoe testified, in substance, that at the time he wrote the letter, he knew the facts as to who were the owners of the land, and that his statements to the Walton Trust Company were true. On August 7th, Rhea executed a deed to defendant for a one-fourth interest in the land, and on December 15, 1917, defendant conveyed this one-fourth interest to Briscoe. A ledger sheet from the records of the First National Bank of Muskogee showing Briscoe's bank account during the month of July, 1917, was placed in evidence. His account showed that on July 7th, the amount of the loan which had been forwarded to him was deposited to his credit. On the same day the sum of $1,484, being approximately the amount of an existing mortgage on the land, was withdrawn from Briscoe's account. This ledger sheet does not show that any other amount was paid out in a single item which would correspond to the difference between the amount of the loan and the amount of the existing mortgage on the land. Defendant testified that he was not interested in the land, but Rhea owed him $1,800, being the

184

original purchase price of the land, and that he signed the note to the Walton Trust Company for the purpose of helping Rhea secure the loan and pay defendant the amount owing to him. However, the record further shows that, on the 5th day of August, 1916, defendant executed and filed for record a release of his mortgage for the sum of $1,800. Neither does it appear how defendant could have been paid out of the $2,400 loan from the Walton Trust Company after paying off another mortgage against the land in excess of $1,400. As heretofore stated, Briscoe also testified on one or more occasions that he owned no interest in the land. In view of these facts, the best that can be said in favor of defendant's contention is that there was a conflict in the evidence as to who was the principal maker of the note, and whether defendant was a comaker or a cosurety with plaintiff and her husband. As to whether the evidence would have supported a judgment against defendant for one-half of the deficiency judgment paid by plaintiff, we need not determine, since plaintiff has not appealed, but we hold that the evidence is amply sufficient to support the judgment rendered.

Lastly, it is contended that the trial court went outside of the record and without the issues in the trial in finding that Briscoe was, in fact, the principal on the note, and the other parties were sureties. The only new question presented by this proposition is whether or not the judgment is within the issues formed by the pleadings. It cannot be ascertained from a reading of the petition, just what theory plaintiff relied upon at that stage of the proceeding. It is alleged that all four parties executed the note; that defendant and Briscoe had an interest in the land; and that plaintiff had no interest in the land. It might be understood from the petition that all were comakers except plaintiff, and it appears that she succeeded to her husband's estate. It is certain that plaintiff alleges definitely that defendant was jointly liable with her on the note, and asks that he be made to contribute one-half of the amount paid. Defendant admitted and contended that his status was that of cosurety with plaintiff and Briscoe, but there was some substantial evidence to the effect that he was a cosurety with plaintiff and Rhea, and that Briscoe was in fact the principal maker of the note. The trial court did not exactly agree with the contention of either party, but found that plaintiff, Rhea, and defendant were co-

sureties, and that defendant should bear one-third of the burden. While contribution may now be enforced in courts of law on an implied promise to contribute, this action was instituted and treated as one in equity. Courts of equity are not generally restricted in the administration of justice by strict rules of pleading to the same extent that courts of law are. Equity looks beyond the mere form of things and to the substance. Such courts as a general rule have power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented. Inman v. Western National Bank of Ft. Worth, 83 Okla. 126, 200 Pac. 714. We conclude that the finding and judgment was not without the issues. The judgment of the trial court is affirmed.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note. See under (1) 28 R. C. L. p. 594; 3 R. C. L. p. 1584; 4 R. C. L. Supp. p. 1830; 5 R. C. L. Supp. p. 1547; 6 R. C. L. Supp. p. 1734. (2) 10 R. C. L. p. 1142. (3) anno. 11 A. L. R. 1238; 3 R. C. L. p. 1135; R. C. L. Perm. Supp. p. 994. See "Evidence," 22 C. J. §1042, p. 868, n. 10. "Witnesses," 40 Cyc. p. 2454, n. 6.