Thomas KATNIG, Plaintiff in Error,

v.

Cecil JOHNSON and Mohawk Petroleum Company, Defendants in Error.

No. 39282.

Supreme Court of Oklahoma.

May 7, 1963.

As Corrected July 9, 1963.

Rehearing Denied July 9, 1963.

Blakemore & Wilson, Sapulpa, for plaintiff in error.

Young, Young & Young, by David Young, Sapulpa, for defendant in error Johnson.

WILLIAMS, Justice.

This action was commenced by plaintiff in error, Katnig, hereinafter referred to as plaintiff, to recover from defendant in error, Johnson, hereinafter referred to as defendant, the sum of $1354.83 alleged by plaintiff to be defendant's proportionate part of the expenses necessary to develop and operate a certain oil and gas lease. Defendant in error, Mohawk Petroleum Company, purchases the oil produced by the lease here in question.

The jury's verdict denied plaintiff any recovery, and he appeals on the original record from an order overruling his motion for a new trial.

In his petition and amendments thereto plaintiff alleged that in April, 1957, the defendant was the owner of an undivided

⁹⁄₁₆ths working interest in a certain oil and gas lease; that by agreement of defendant and the other owners a well was drilled which was a producer; that thereafter plaintiff acquired an ¹⁸⁄₃₂nd interest in said lease; that plaintiff, defendant and one Ashlock (owner of an ⁸⁄₃₂nd interest) operated said lease as mining partners and the three agreed that plaintiff should be the operator of such lease; "that under the terms of said lease it was necessary that an additional well be commenced around the 1st of June, 1958"; that the plaintiff advised the defendant by letter dated June 11, 1958, that an additional well was being commenced and that defendant's proportionate share of the cost of the drilling would be approximately $2500.00; that shortly thereafter, defendant appeared at the well and remained there during the drilling of such well.

In his answer, defendant denied that he authorized the drilling of the second well or acquiesced or agreed to the same or authorized anyone to act as his agent in any matter pertaining to said lease.

Plaintiff's and defendant's evidence tended to support the allegations of their respective pleadings. The second well was a dry hole.

For reversal plaintiff advances three propositions. "Proposition No. 1" is that "The court should have directed verdict for plaintiff." This proposition has four sub-divisions. We shall consider sub-divisions "A" and "B" together. They are as follows:

"A. The plaintiff was the operating partner of a mining partnership and was empowered to make proper and reasonable expenditures in the operation and development of the lease-hold even without the consent and approval of the defendant.

(However, the evidence disclosed that the defendant did participate in the drilling of the additional well.)"

"B. The evidence further disclosed that the defendant concurred in the operation of the leasehold by the plaintiff while only Well No. 1 was producing, and concurred and participated in the drilling of Well No. 2, the drilling of said Well No. 2 being necessary to preserve the leasehold of 160 acres, with the exception of the ten acres around Well No. 1."

Plaintiff is here assuming that he and defendant were members of a mining partnership. Defendant denied that he concurred and that he participated in the drilling of Well No. 2.

Defendant Johnson testified that he never agreed with anyone to bear any cost of drilling Well No. 2; that no one at any time consulted with him about the location of Well No. 2, the depth of the well, how it would be drilled, cost of drilling, or anything else connected with the drilling operation; that he never entered into any agreement to drill a second well or share profits and losses from a second well.

In the case of Gillespie v. Shufflin et al., 91 Okl. 72, 216 P. 132, we held in the first and third paragraphs of the syllabus:

"In order to constitute a mining partnership, the parties must co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses. * * *

"Inter sese, there must be an intention of the partners to do so, in order to create a partnership, and such intention cannot be inferred, alone, from a joint venture in drilling a well."

In the case of McAnally v. Cochran, 170 Okl. 368, 46 P.2d 955, 957, 959, we said:

"The mere holding of an interest in an oil and gas lease and leasehold estate with other cotenants and having knowledge that a well was being drilled thereon by one or more of the cotenants does not constitute 'co-operation' as contemplated by the authorities herein cited. * * *

* * * * * *

"'* * * The co-operation under any definition of that term must be in the drilling of the well and not in the joint ownership of the lease. The agreed facts show that Dillen reported to Anderson from time to time, but we think this insufficient to show co-operation under any meaning of that term. * * *'

* * * * * *

"Some of the interested parties were never on the leasehold estate prior to this suit. Others were there as spectators merely, as they had a right to be, and none exercising authority."

In Sparks v. Midland Supply Company et al., Okl., 339 P.2d 1056, we said in the syllabus:

"No. 2. Whether or not a mining partnership exists in any case is largely a question of fact to be determined from the facts and circumstances surrounding each case.

* * * * * *

"No. 4. The effect and weight to be given conflicting testimony is a question of fact to be determined by the trier of facts, whether court or jury, and is not a question of law for this court on appeal."

In the case of Prince et al. v. Sullivan et al., 124 Okl. 298, 256 P. 23, 24, we said:

"It appears from the evidence in this case that defendants * * * never agreed to pay their part of the expenses of the drilling, and that therein is the liking (sic) to constitute a mining partnership. It is true that there is conflicting evidence as to this agreement.

"This being a law case and the jury waived, the findings of the court will not be disturbed on appeal where there is any competent evidence reasonably tending to support the same."

The verdict in the trial court in the present case was for defendant.

Sub-division "C" of plaintiff's Proposition No. 1 is:

"(C) The defendant by letter, after completion of Well No. 2, disclosed that he did concur in the drilling of this Well No. 2. Having thus admitted his liability, and agreed to the account submitted by the plaintiff, he could not thereafter make denial thereof.".

In his reply brief, plaintiff states "He (counsel for defendant) does refer to our claim that there was actually an account stated between Katnig and Johnson, by reason of the fact that Katnig had submitted bills on Well No. 2 which were not disputed. He attempts to say that we are thereby seeking to change the theory of our case in this court. It is obvious that we are not now attempting to have this court try this case on the grounds of an account stated. It is obvious that we were merely citing this circumstance along with the fact that Johnson by his belated letter to Katnig, did acknowledge his liability for his pro rata cost of Well No. 2, and not having put on any proof at the trial to counteract any of the items of the account, and that, coupled with his other conduct in the case, left nothing for the jury to try."

Johnson testified that when all the bills started arriving, he tried to "get out from under" and to compromise by selling out to Katnig; that he wrote letters to Katnig trying to compromise the dispute.

In the case of Wammack et al. v. Jones, 103 Okl. 1, 229 P. 159, 160, we said:

"Of course, all of the parties own an interest in this lease and were interested in having the test well drilled, but this did not make them partners. 'A mere community of interest as owners of specific property, or of the profits from a particualr adventure or business, does not necessarily of itself, constitute the co-owners partners.' Gorman v. Carlock, ([72] Okl.Sup. [104]) 179 Pac. 38 (not yet officially reported)."

In the case of Miller v. Hickman, Okl., 359 P.2d 172, we said in the first paragraph of the syllabus:

"Juries are the triers of the facts and the sole judges of the credibility of witnesses, and of which of various conflicting, but reasonable, inferences may be drawn from their testimony. After a jury has merged its conclusions in a verdict, and judgment is entered accordingly, if there is any competent evidence reasonably tending to support said judgment, it cannot be said to be 'not sustained by the evidence'; and will not be reversed on account of the trial court's alleged errors in submitting the case to the jury, or in refusing to grant a new trial on account of such alleged errors."

We think there is testimony reasonably tending to support the jury's finding that there was not a mining partnership.

Sub-division "D" of plaintiff's "Proposition No. 1" is:

"(D) By the terms of the lease, unless an additional well was begun within one year from completion of the first well, the lease became void as to all acreage except ten acres surrounding said first well. Plaintiff did commence and complete the additional well at his expense and thereby saved 150 acres of leasehold."

The plaintiff contends "that the defendant could not accept the benefits of a requirement of such provision in a contract and deny all liability for that which was done to preserve his interests;" and that even though he knew nothing about the provision, he was, nevertheless, bound by it as it was a matter of record. Plaintiff cites no authority in support of such contentions.

In the case of Superior Oil Company v. Oklahoma Corporation Commission, 206 Okl. 213, 242 P.2d 454, 456, we held that an owner of an undivided mineral interest in a forty acre tract had inherent right to drill such land for oil and gas and

"he thus assumed the entire risk of the venture if it proved a failure." Thus we see that defendant Johnson was not required to participate in the drilling by plaintiff Katnig of Well No. 2, unless he be found to have agreed to do so.

Plaintiff argues that it would be unfair for it to be determined that he could claim no contribution from Johnson and yet that such defendant may retain title to a mineral interest in the 150 acres other than the No. 1 Well location involved in this suit. One adequate answer to this argument is that defendant Johnson purchased his interest with the understanding, as demonstrated in this opinion, that Well No. 1 would be drilled to the Bartlesville sand without contribution on his part and that, as demonstrated in this opinion, Mr. Johnson was not required either to enter into a joint venture or a mining partnership to effect the drilling of Well No. 2 and further, as discussed herein, that the jury by its verdict, determined the facts in favor of defendant Johnson.

No question as to defendant Johnson's title to the described 150 acre mineral interest was raised either in the trial court or in this appeal.

Plaintiff states that the judgment denies him any relief for money that he had put out for operating Well No. 1.

Plaintiff on March 7, 1960, filed "Amendment to Petition". Therein, in paragraph IV, he alleged that since the date of the filing of the petition certain operating costs totaling $247.59 had been incurred in connection with Well No. 1. Defendant's proportionate share of such operating costs would be approximately $46.42. In paragraph III of such "Amendment to Petition", the plaintiff stated that the defendant should have a credit of $75.00, for his share of the value of an oil storage tank which had been moved from the lease. In as much as the plaintiff admitted, in effect, in the aforementioned pleading that he owed defendant more on Well No. 1 than defendant owed him, the jury properly refused to enter a judgment for plaintiff and

against the defendant for the operating costs on Well No. 1.

Plaintiff's "Proposition No. 2" is:

"Even if there were any evidence to go to the jury the court committed palpable error."

Under this proposition plaintiff makes two claims of error. The first is that:

"A. In permitting to go to the jury a letter written by the seller of the interest in the leasehold held by the defendant. There was absolutely no evidence to connect the plaintiff with this party. The defendant had acquired his interest in the lease long before the plaintiff acquired his interest. There was absolutely no testimony to show that the plaintiff had any connection with the party writing this letter to the defendant."

A portion of such letter is as follows:

"Eureka Kansas,
March 19, 1957

\*    \*    \*    \*    \*    \*

"Dear Mr. Johnson:

\*    \*    \*    \*    **\***    \*

"We have to start a well on this tract within thirty days. Our price is $1250.-00 per ⅛ interest and we will sell up to ⅜ths, subject, of course, to prior sale. This price includes a well drilled free to you to the Bartlesville sand, unless we should get oil at a lesser depth as there are two other sands about 100 ft. above the Bartlesville sand. The money would be held in escrow until the well is finished at which time it would be paid to us and if we failed to drill the well it would be returned to you. \*    \*    \*

"E. S. Tucker"

In his amended petition filed May 1, 1959, plaintiff alleged " \* \* \* That accordingly the plaintiff advised the defendant by letter dated June 11, 1958, copy of which is attached hereto and marked Exhibit 'B'

\*  \*  \*" In such letter plaintiff stated "As of May 1st, I have acquired the interest of Mr. Goodrigh and a partial interest of Mr. Ed Ashlock in the Laury Farm Lease \* \* \*" The defendant acquired his interest in the Laury Farm Lease from Mr. Ashlock. Plaintiff does not deny that Tucker was acting as the agent of Ashlock when he wrote the letter of March 19, 1957, to defendant.

In 31 C.J.S. Evidence § 343, p. 1113 is the following language:

" \* \* \* an admission of an agent \* \* \* may be received in evidence against his principal, if relevant to the issues involved, when the agent, in making the admission, was acting within the scope of his authority, and the transaction or negotiation to which the admission relates was pending at the time when it was made."

In Hemisphere Oil & Gas Co. v. Oil Well Supply Co., 104 Okl. 83, 230 P. 245, we said in the fourth paragraph of the syllabus:

"Proof of statements made by the holder and owner of a producing oil and gas lease that the \* \* \* materials were used in the development and operation of the lease, was properly admitted in evidence as against his assignee."

In the body of such opinion is the following quotation from 22 C.J. 356:

" 'Declarations of an owner of land prior to his conveyance are competent as against his grantee and other privies, in disparagement of his title. They are also competent to show the existence of easements on the premises' 16 Cyc. 986."

Plaintiff did have a "connection with" the principal, Ashlock, for whom the writer of the letter was acting as agent when he wrote such letter. Plaintiff acquired some of his interest in the Laury Farm Lease from such principal, Ashlock, and defendant acquired his interest in such lease from Ashlock.

In 20 Am.Jur. Evidence, §§ 593, and 593.1, pp. 502 and 503, is the following language:

"The declarations of a third person are admissible against a party whenever privity of estate exists between the declarant and the party, the term 'privity of estate' generally denoting in this respect a succession in rights. The declarations of the privy in estate are deemed in law to be the declarations of the party himself. Thus, whenever a party claims under, or in the interest or right of, another, the declarations of such other person pertaining to the subject of the claim are admissible against him. As a general rule, the declarations of the former owner against his own interest are admissible against his successors in interest * *

"There is a general rule that one who acquires title to property is bound by statements against interest made by his predecessor in title in respect of the property * * *"

As a result of the "privity of estate" between Ashlock and plaintiff, the latter is charged with the admissions against interest of the former. The letter was admissible in evidence, to show the terms of the grant from Ashlock to defendant.

Plaintiff's second argument under "Proposition No. 2" is that:

"B. The court erroneously instructed the jury that it would have to find a contract existing between the plaintiff and the defendant, either orally or in writing, before they could find liability on the part of the defendant."

The trial court gave the following "Instruction No. 5:

"You are instructed that the ownership of separate interests in and to an oil and gas mining lease does not necessarily create a mining partnership among such owners.

"You are further instructed that such a partnership arises by agreement and may be proven by either the express agreement of the parties or by their joint cooperation and joint efforts in the development and disposition of such property.

"Mere co-tenancy of individuals in the ownership of an oil and gas lease does not create such partnership, but each co-tenant would have the legal right to go upon the oil and gas leasehold estate and proceed with the development thereof independent of any action of other co-tenants and would be entitled, in the event of procuring commercial production, to recover and receive full compensation for the expenditures made by him in such development before being liable to share the proceeds of such production with his co-tenants.

"*You are therefore instructed that before the plaintiff can recover in this case he must prove to your satisfaction by a preponderance of the evidence that he had with the defendant in this action an agreement either oral or in writing that the well involved in this action should be drilled at the expense of both parties, to be paid ratably by them in proportion to their respective interests. In other words, that they were to share proportionately in either or both profits and loss.*" (Emphasis supplied by plaintiff.)

Plaintiff objects to the last quoted paragraph of such instruction. Such part of such instruction given by the trial court covered an allegation made in paragraph "II" of plaintiff's petition. Therein plaintiff alleged " * * * That said Ashlock, the defendant Johnson, and the plaintiff have together operated the said oil and gas lease as mining partners, each agreeing to bear his proportionate part of any and all expenses necessary to the development and operation thereof, and share likewise in all profits therefrom * * *"

The plaintiff contends "That it is not necessary that there be an 'oral or written agreement' between the co-owners to constitute a mining partnership * * *"

The second paragraph of "Instruction No. 5" above quoted, and instructions 3 and 4b each in effect advised the jury that a formal oral or written agreement between the parties was not necessary to establish a mining partnership.

"Instruction No. 3" in part states:

" * * * No precise or set form of words is necessary to constitute a contract as the agreement of parties may be inferred from their acts and conduct as well as from their words."

"Instruction No. 4b" which was requested by the plaintiff, is as follows:

"If you find by a preponderance of the evidence that the defendant was present upon said lease during any drilling operations thereon, and acquiesced in such drilling operations, then you are advised that thereby the defendant became a mining partner with the plaintiff and other owners of interest in said lease.

"And if you so find the defendant to be a mining partner therein, you are advised that he is liable for 3/16ths of any sums that may have been expended in the necessary and proper development and operation of said lease.

"If, therefore, you find from a preponderance of the evidence that the plaintiff expended with the advise and consent of defendant, any sum in the necessary and proper development and operation of said lease, your verdict should be for the plaintiff and against the defendant for 3/16ths of such sum."

In the case of Maddox v. Bridal, Okl., 329 P.2d 1049, in paragraphs 4 and 5 of the syllabus, this court said:

"Where the instructions as a whole correctly state the law, a verdict based on the evidence will not be disturbed, though some instruction alone may not fully state the law.

"Instructions are to be considered in their entirety; no particular paragraph is to be singled out; neither a part nor paragraph will be given consideration to the exclusion of other parts or paragraphs; and where the jury is properly instructed in one paragraph of an instruction, it is unnecessary to repeat in other paragraphs of the instructions."

When considered in their entirety, the instructions given by the trial court properly covered the issues of the case.

Plaintiff's "Proposition No. 3" is that:

"The court committed gross error in not permitting the plaintiff on motion for new trial to introduce documentary evidence showing that the defendant swore falsely at the trial to the effect that he had no experience in the oil business."

In answer to such proposition defendant argues that plaintiff's "Amendment to Motion for New Trial" was filed too late; that it was not verified and no affidavits were tendered in support thereof. In his "Reply Brief" plaintiff does not attempt to respond to such arguments.

The jury returned its verdict on March 8, 1960.

On March 16, 1960, plaintiff filed an unverified "Motion for a New Trial" setting forth the following grounds:

"1. That said judgment is contrary to law.

"2. That said judgment is contrary to the facts.

"3. That said judgment is contrary to the law and the facts.

"4. For error of the court in admitting, over the objection of the plaintiff, incompetent, irrelevant and immaterial evidence.

"5. For error of the court in overruling plaintiff's motion for a directed verdict under the evidence.

"6. For error of the court in giving inconsistent and misleading instructions."

On June 3, 1960, plaintiff filed an unverified "Amendment to Motion for a New Trial."

 

The pertinent part of such motion is as follows:

"Comes now the plaintiff, Thomas Katnig, and incorporates hereby by reference thereto all those items contained in his original Motion for a New Trial, and further moves the court to set aside the judgment rendered herein on the 8th day of March, 1960, and to grant to plaintiff a new trial for the further following causes, which materially affect his substantial rights:

\* \* \* \* \* \*

"By reason of the false swearing of the defendant at the trial herein; that the defendant testified that he was an illiterate man, having only a first grade education; that he knew nothing about the oil business, and had never been in the oil business. That he knew nothing about oil bearing stratas or drilling practices; that he knew nothing about any of the operations on the well in question except what was related to him by those in charge of drilling the well \* \* \*, all of which testimoney was false, and material to the issues involved herein."

In the case of Lewis v. Conley, Okl., 317 P.2d 761, 765, we stated:

"\* \* \* The supplemental motion did not set up new and independent grounds but was merely an elaboration and clarification of the original motion.

"'A motion for a new trial may be amended, after the three days allowed by the statute for filing the motion, by a clearer more appropriate statement or elaboration of the grounds originally set up; but such amendment, filed after the statutory time has expired, cannot set up new and independent grounds therefor.' Wiggins v. Jackson, 52 Okl. 723, 153 P. 879."

The amendment to "Motion for New Trial" was filed after expiration of the time therefor provided by statute.

It set up an entirely new ground than those comprehended by the original. This court may not now consider such amendment to such motion.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and IRWIN and BERRY, JJ., concur.

WELCH, DAVISON and JOHNSON, JJ., concur in result.