Robert P. LAMMERTS, Plaintiff in Error,

v.

**HUMBLE OIL AND REFINING COMPANY,**
a Corporation, Defendant in Error.

No. 42617.

Supreme Court of Oklahoma.

Nov. 24, 1970.

Robert N. Berry, Walker & Watson, Oklahoma City, for plaintiff in error.

Varley H. Taylor, Fowler, Rucks, Baker, Jopling, Gramlich & Mee, Richard W. Fowler, Oklahoma City, for defendant in error.

WILLIAMS, Justice:

This is an appeal from a judgment of the trial court entered in an action brought by plaintiff, defendant in error herein, to recover from defendant his (defendant's) proportionate share of the cost allegedly due plaintiff for the drilling of an oil and gas well in a unit located in Blaine County, Oklahoma. On appeal, reference will be made to the parties, as they appeared in the trial court.

In 1962, plaintiff, defendant and two other parties not involved herein, owned oil and gas leases covering Section 8, Township 18, North, Range 10 West, Blaine County. Sometime early in 1962, plaintiff proposed to the other lease owners the drilling of a well in section 8. The negotiations concerning such proposal eventually led to the execution by plaintiff and one of the two parties not involved herein of an operating agreement and an authorized financial expenditures agreement or "A.F.E.". The other party not involved in this controversy did not desire to participate in the drilling of the well and "farmed-out" its interest to plaintiff. These agreements named plaintiff operator of the proposed well, determined the location of the well and the depth, manner and cost of the drilling. Defendant had certain objections to plaintiff's proposal and did not deliver to plaintiff executed copies of either the operating agreement or the A.F. E.

In July, 1962, the primary terms of some of the leases covering section 8 were apparently near expiration. Although defendant still had not agreed to the details of the drilling of the proposed well, plaintiff presented a Declaration of Pooling to the other three lease owners the provisions of which would unitize all leases covering section 8 so as to constitute such section as a single unit for the operation and productions of natural gas and natural gas condensate. This declaration was executed by all lease owners, including defendant.

On August 1, 1962, plaintiff commenced the drilling of a well on section 8. On September 28, the well was completed as a dry hole.

After defendant continually refused to reimburse plaintiff for his proportionate share of the amount expended by plaintiff in drilling the well in section 8, plaintiff instituted this proceeding in the trial court. In its petition, plaintiff alleged that defendant had agreed, sometime in July, August or September, 1962, to pay his proportionate share, which was 9.375 per cent, of the reasonable cost of drilling the well in section 8; that the actual and reasonable cost of drilling the well as a dry hole was approximately $104,000; that defendant had refused to pay his share on the stated reason that the alleged reasonable drilling cost was excessive; and, that in settlement of the controversy, defendant and employees of plaintiff reached a compromise on January 8, 1963, where defendant agreed to pay plaintiff the sum of $5625.00 which plaintiff agreed to accept as full payment and, as a further part of such settlement, plaintiff agreed to pay defendant certain sums it owed to defendant in a separate and unrelated transaction which sums plaintiff had held as an offset to defendant's indebtedness. Plaintiff requested judgment against defendant for the amount of $5625.00, or, in the alternative, for the amount of $9,786.09, if the court did not find defendant liable on the alleged agreement of compromise and settlement. This latter stated alternative amount of $9,786.09 is apparently defendant's proportionate share of the approximately $104,000 amount plaintiff alleged to be the actual and reasonable cost of the well.

From the evidence submitted at trial, it appears clear that defendant objected to plaintiff's proposed cost of the well from the beginning of negotiations through to the time of the completion of the well. Defendant initially also objected to the well's location but he admitted that had the parties reached an agreement concerning reasonable drilling costs, he would have acquiesced to the well's location and probably would have signed the A.F.E. and operating agreement.

Defendant testified he executed the Declaration of Pooling as an accommodation to plaintiff due to the nearness of lease expiration dates, but that he did not intend by doing so to indicate his participation in the drilling of the well. Defendant introduced a letter written by him to plaintiff August 13, 1962, on which date the well in section 8 was in the process of being drilled, wherein he stated that although he was sympathetic with plaintiff's problem of lease expirations, he was of the opinion that plaintiff's cost of drilling the well, as shown by the A.F.E. presented to him, was excessive. In this letter, defendant offered to discuss the problem in an attempt to arrive at some solution.

Concerning the alleged oral compromise agreement of January 8, 1963, John H. Folks, plaintiff's division landman, testified that on this date he went to defendant's office and offered to settle plaintiff's alleged claim against defendant for his proportionate share of the drilling costs of the well in section 8 for the sum of $5625.00. This amount was based upon defendant's 9.375 per cent share of a well costing $60,000, rather than the amount of approximately $104,000 plaintiff contended was the actual and reasonable cost of drilling the well. Witness stated that defendant agreed to accept this settlement and then he (witness) agreed that plaintiff would release funds (some $11,000) it presently owed defendant for the drilling by defendant of a different well in which it (plaintiff) had participated. Folks testified he knew defendant was "eager" to obtain the funds held by plaintiff and agreed to have them released immediately, but stated that by immediately he meant in the due course of his company's business procedure. The witness denied making any agreement to have the funds delivered to plaintiff within a few days subsequent to January 8.

The evidence establishes that approximately $10,000 of the $11,000 amount owed to defendant by plaintiff was received by defendant within two weeks of the alleged compromise agreement. The balance thereof was received by defendant several months later apparently after erroneous invoices were corrected.

Defendant admitted accepting the January 8th agreement but stated that he did so only after plaintiff's employee stated that the funds held by plaintiff would be released within one or two days. Defendant also testified that Folks implied the funds held by plaintiff would not be released unless he (defendant) accepted the compromise settlement. Defendant further stated he considered the agreement breached by plaintiff when the entire amount of the withheld funds were not received by him within several days.

At the conclusion of trial, the court entered judgment for plaintiff in the amount of $5625.00. From this judgment and an order overruling his motion for new trial, defendant appeals.

On appeal, defendant contends there was no obligation prior to January 8, 1963, on his part to pay any amounts for the drilling of the well in section 8, and, on or after January 8, there was no enforceable obligation binding upon defendant to pay the sum of $5625.00 for the reasons of no valid consideration to support the alleged compromise agreement and of the failure of plaintiff to perform in accordance with the terms of such agreement.

From the record before us, it appears clear the judgment of the trial court was based upon the existence of a valid and enforceable compromise agreement performed in full by plaintiff.

In Taylor v. Taylor, Okl., 389 P.2d 622, we stated, in the first paragraph of the syllabus:

"A doubtful or disputed claim, honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated and concerning which an honest controversy may arise, is sufficient to constitute a good consideration for a contract of compromise and settlement although it may subsequently develop that such claim was unfounded."

From a review of the record herein, it is our opinion that from the negotiations of the parties herein, including conversations, correspondence and defendant's execution of the Declaration of Pooling and admission that he probably would have executed the operating agreement and A.F.E. if a reasonable drilling cost had been agreed upon, plaintiff could have honestly and in good faith asserted a cause of action, however doubtful such may have been, against defendant alleging he impliedly had agreed to pay his proportionate share of the reasonable drilling costs of a well in section 8. In view of the above quoted rule from Taylor v. Taylor, supra, this constitutes a valid consideration for the compromise agreement.

Defendant admits entering into the compromise agreement of January 8, but denies plaintiff performed its terms. In the third paragraph of the syllabus in Rucker v. Republic Supply Co., Okl., 415 P.2d 951, we held:

"In a civil action triable to a jury, where a jury is waived and the cause is tried to the Court, the findings of the trial court have the force and effect of a jury verdict; and where the finding is a general one, there being no errors at law, the judgment will not be disturbed on appeal if any competent evidence reasonably tends to support the conclusions of the trial court."

Inherent in the judgment in the instant case is the finding by the trial court that the terms of the compromise agreement were as alleged by plaintiff and that plaintiff had fully performed these terms. In our opinion, there is competent evidence in the record to support this finding.

Defendant, citing Katnig v. Johnson, Okl., 383 P.2d 195, maintains that in the instant case there was no mining partnership and that when plaintiff drilled the well in section 8 without an agreement from defendant to share in the expenses, it assumed the entire risk of the venture. This may well be a correct statement of the law but it is not applicable to the controversy herein. In the case at bar, the questions presented were whether there existed a valid and enforceable compromise and settlement agreement and whether plaintiff performed the terms of such agreement.

The case made includes a copy of a supersedeas bond executed by the defendant, as principal, and E. Peter Hoffman, as surety. Pursuant to the provisions of 12 O.S. 1961, § 971, judgment is hereby rendered against said E. Peter Hoffman, in favor of the plaintiff in the trial court, Humble Oil and Refining Company, a corporation, in the principal amount of $5625.00, together with interest at the rate of six per centum (6%) per annum from the 8th day of January, 1963, until paid, and all costs of the action in the trial court and the costs of this appeal; and the trial court hereby is directed to enter and enforce this judgment against said surety as if rendered in that court.

The judgment of the trial court is affirmed.

IRWIN, C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES, LAVENDER, and McINERNEY, JJ., concur.